Sucesión de Gregorio Maldonado Ortiz, demandante y peticionaria, *v.* Sucesión de Francisco Maldonado Hernández et al., demandados y recurridos, y Víctor Maldonado Dávila et al., interventores y peticionarios.

*Números:* CC-2003-696
CC-2003-714

*Resueltos:* 9 de noviembre de 2005

160

*Eugenio Rivera Lozada*, abogado de la parte peticionaria; *Héctor Bonilla,* abogado de la parte recurrida; *Heidi Rodríguez*, abogada de la parte interventora y peticionaria.

EL JUEZ ASOCIADO SEÑOR RIVERA PÉREZ emitió la opinión del Tribunal.

Los peticionarios acuden ante esta Curia mediante sendos recursos de *certiorari* solicitando la revisión de una sentencia emitida por el entonces Tribunal de Circuito de Apelaciones el 17 de junio de 2003. En virtud del dictamen recurrido, el foro intermedio apelativo confirmó una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, que desestimó sumariamente una acción de petición de herencia por el fundamento de que está prescrita. El 27 de octubre de 2003 emitimos una resolución mediante la cual expedimos los autos de *certiorari* solicitados y ordenamos, además, la consolidación de ambos recursos. Habiendo comparecido las partes litigantes por medio de sus respectivos alegatos, estamos en posición de resolver los asuntos traídos ante nuestra consideración.

## I

El 8 de noviembre de 1995 miembros de la sucesión de don Gregorio Maldonado Ortiz[1] instaron ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, una demanda sobre "administración, división de herencia y daños y perjuicios" contra, entre otros, la sucesión del también coheredero, Sr. Francisco Maldonado Hernández. Alegaron que don Gregorio Maldonado Ortiz y su cónyuge, la Sra. Belén Hernández Bracero, fallecieron intestados en 1943 y 1935, respectivamente, dejando como únicos y universales herederos a sus quince hijos. El único activo del caudal relicto de ambos lo constituye una propiedad inmueble sita en el Bo. Maricao del municipio de Vega Alta.[2] La parte demandante arguyó, en breve síntesis, que los miembros de la sucesión demandada, entre otras personas, han ocupado y disfrutado del referido bien inmueble sin autorización. En razón de ello, reclamaron la partición del caudal hereditario y que se condenara a los demandados a compensarles por el uso y disfrute de la finca en controversia.

---

[1] Compuesta, a su vez, por las sucesiones de sus hijos: Carmen, Valentina, Joaquín, Mariano, María, Manuela, Joaquina, Inés, Josefina, Elías y Elisa, todos de apellidos Maldonado Hernández.

[2] Descrita en la demanda de autos de la manera siguiente:

"**RÚSTICA:** Estancia con habitación en el Barrio Maricao de la jurisdicción de Vega Alta compuesta de CIENTO CUATRO CUERDAS (104 cdas.) cincuenta céntimos (50) de terreno, cuya equivalencia al sistema métrico decimal no consta pero hecha su reducción resulta de Cuarenta y una (41) hectáreas, Seis (6) áreas y Ochenta y cinco (85) centiáreas. Siendo la casa de madera y techo de yaguas con Diez (10) varas de frente y Ocho (8) de fondo equivalentes a Cincuenta y seis (56) metros cuadrados. Linda por el Este, con Luis Oliveras, Sucesión de Agustín Meléndez, representada por Nicolás del mismo apellido y María Ángeles Rosado; Norte, don Tomás Maldonado e Igaravidez; por el Oeste, con María Basilia Martínez y José Rivera y por el Sur, con Avelino Rodríguez."

"Dicha finca se encuentra presentada al folio Noventa y Cuatro (94) del tomo uno (1) de Vega Alta, finca número diez y siete (17)."

Según consta de la certificación expedida por el Registrador de la Propiedad a instancias del Sr. Guillermo Rodríguez el 28 de octubre de 1991, la finca antes descrita, a esa fecha, aún estaba inscrita a favor de Don Gregorio Maldonado Ortiz. Véase Apéndice de la Petición de *certiorari* Núm. CC-2003-696 (Apéndice), págs. 2 y 68.

El 4 de enero de 1996 los miembros de la sucesión de Francisco Maldonado Hernández y su viuda Felícita Suárez Guzmán presentaron su contestación a la demanda, negando las alegaciones principales en su contra. Reconvinieron contra la sucesión demandante.[3] Alegaron ser dueños de la propiedad inmueble en litigio porque su causante la había adquirido mediante compraventa a sus progenitores, don Gregorio y doña Belén. Asimismo, sostuvieron que su padre, don Francisco Maldonado Hernández, ocupó y cultivó la referida finca hasta el día de su fallecimiento y que, desde entonces, son ellos los que la han poseído y cultivado en concepto de dueños, ejerciendo actos de dominio sobre ésta durante más de cincuenta años. Por último, levantaron como defensa afirmativa que la acción entablada en su contra estaba *prescrita*.[4]

Trabada la controversia, el 5 de abril de 1999 la sucesión demandada presentó una moción de desestimación, reiterando su argumento de que la acción ejercitada por los demandantes, por ser realmente una petición de herencia, había prescrito. Igualmente, adujeron ser propietarios de la referida finca por haberla poseído de forma quieta, pública, pacífica, de buena fe y en concepto de dueños por espacio de más de treinta años. Argumentaron, además, que ninguno de los demandantes ha poseído, ocupado o residido en dicha finca con anterioridad al fallecimiento de don Gregorio y doña Belén. Advirtieron, por último, que no existe evidencia demostrativa de que los padres de los demandantes hayan interpuesto, en algún momento, una acción de petición de herencia relacionada con el caudal relicto aquí en disputa.

El 13 de septiembre de 1999 la parte demandante se opuso a la solicitud de desestimación. Arguyó que el cohe-

---

[3] Solicitaron al foro primario que ordenara al Registrador de la Propiedad la inscripción del inmueble litigioso a nombre de los herederos del Sr. Francisco Maldonado Hernández.

[4] Apéndice, págs. 10–13.

redero, Sr. Francisco Maldonado Hernández, nació, se crió y luego habitó junto a su familia en una casa enclavada en la finca en litigio hasta su muerte el 29 de mayo de 1965; *ello así por la mera tolerancia de sus progenitores o con el "permiso y licencia" concedida por éstos.* Destacaron, además, que la sucesión del señor Maldonado Hernández y su viuda permanecieron ocupando la referida finca bajo las mismas circunstancias que su causante; es decir, *"en calidad de precaristas"*, y no en concepto de dueños, por lo que estaban impedidos de invocar la prescripción ordinaria o extraordinaria como medio adquisitivo del dominio de la finca.[5]

En apoyo de sus argumentos, la parte demandante sometió, como parte de su escrito en oposición, una declaración jurada del Sr. Teófilo González Hernández, vecino colindante de la propiedad en controversia durante setenta años. Éste declaró allí que "siempre se le ha reconocido anteriormente como dueño de la finca a Don Gregorio Maldonado y ahora a la Sucesión de Don Gregorio Maldonado y sus nietos y que todo el público y vecinos reconocen que el único dueño son sus herederos de Don Gregorio y Doña Belén". Asimismo, expuso que el Sr. Francisco Maldonado Hernández vivió en dicha finca con el permiso de sus antiguos dueños y, posteriormente, con el de la sucesión de Don Gregorio Maldonado Ortiz.[6] La sucesión demandante incluyó también una declaración bajo juramento de la codemandante Carmen Felisa Morales Maldonado, nieta de don Gregorio y doña Belén. Ésta sostuvo, *inter alia*, que las contribuciones sobre la propiedad litigiosa han sido pagadas siempre por los miembros de la sucesión demandante. Además, declaró que, en un principio, don Gregorio y doña Belén le concedieron permiso a su hijo, Sr. Francisco Maldonado Hernández, y a su cónyuge para que vivieran en la finca. Sobrevenida la muerte de Don Francisco, la sucesión

---

[5] Íd., págs. 19–20.

[6] Íd., págs. 24–25.

demandante accedió a que la viuda e hijos de aquél continuaran residiendo en dicha propiedad, mas no como dueños, sino como meros detentadores hasta tanto se dividiera el caudal relicto en controversia o se enajenara el inmueble, el cual había estado en venta desde 1943 hasta 1950. La declarante aludió a ciertas gestiones efectuadas por la parte demandante para la venta de la finca, encabezadas por su difunta madre, la Sra. Carmen Maldonado Hernández, las cuales resultaron infructuosas por discrepancias con respecto al precio de venta establecido. Además, la declarante hizo referencia a otras gestiones en las que participaron la sucesión demandante, la codemandada, Sra. Pura Maldonado Suárez, esta última en representación de los demás miembros de la sucesión demandada, y ciertos abogados, con el propósito de liquidar el activo sucesoral y entregar a cada heredero su participación en los haberes hereditarios que dejaran los finados don Gregorio y doña Belén. Alegadamente, estos últimos trámites también resultaron ineficaces al no lograrse un acuerdo en cuanto a los gastos y honorarios de abogado que debían satisfacerse.(7)

Así las cosas, el 14 de febrero de 2000, el Sr. Víctor Maldonado Dávila y su cónyuge, Sra. Bess Mitchel Taylor, solicitaron intervenir en el pleito de marras por alegadamente tener un interés propietario sobre la finca litigiosa. En apoyo de su pretensión, adujeron haber adquirido mediante escritura de cesión,(8) otorgada el 8 de febrero de 2000, todos los derechos y las acciones que sobre dicha finca ostentaban los causahabientes del Sr. Elías Maldonado Hernández, heredero a su vez de don Gregorio y doña Belén. La participación obtenida por los allí comparecien-

---

(7) Íd., págs. 26–29 y 79–84.

(8) Comparecieron al otorgamiento de la referida escritura como vendedores los Sres. Elías y Francisco Maldonado Maldonado, y la Sra. Luz Mercedes Maldonado Maldonado, sucesores del finado Elías Maldonado Hernández.

tes es equivalente a una catorceava (¹/₁₄) parte del caudal hereditario.(⁹)

Atendida la petición de intervención en la vista realizada el 17 de marzo de 2000, el Tribunal de Primera Instancia la declaró "con lugar". En dicha ocasión, y en lo que respecta a la moción de desestimación presentada por la sucesión demandada, el foro primario se reservó su fallo hasta tanto celebrara una vista evidenciaria sobre usucapión, la cual señaló para el 6 de diciembre de 2000.(¹⁰) Posteriormente, la referida vista fue suspendida y reprogramada como "vista en su fondo" para el 2 de abril de 2001. El tribunal primario instruyó, además, a las partes para que, en ocasión de la "vista en su fondo", le ilustraran en torno a si un heredero, al usucapir, lo hace únicamente en nombre propio o "en beneficio de la sucesión".(¹¹)

Tras múltiples incidentes procesales, y celebrada la referida vista, el foro primario determinó que la controversia por dirimirse en el caso de marras era *estrictamente de derecho*, a saber: ¿cuál era la fecha que ha de tomarse como punto de partida para computar el término prescriptivo de treinta años que tenía la sucesión demandante para incoar oportunamente una acción de petición de herencia? Según la parte actora, dicho término comenzó a transcurrir a partir del fallecimiento del Sr. Francisco Maldonado Hernández, acontecido el 29 de mayo de 1965. Por su parte, la sucesión demandada sostuvo que dicho término se inició verdaderamente con la muerte de don Gregorio Maldonado Ortiz, ocurrida el 11 de febrero de 1943.

Así pues, el 18 de abril de 2002, la sucesión demandante presentó una solicitud para que se dictara sentencia suma-

---

(⁹) Íd., págs. 30–35.

(¹⁰) Véase Minuta Resolución, emitida por el foro primario el 17 de marzo de 2000. En esa vista, el foro primario también ordenó el desistimiento sin perjuicio de la demanda de autos en cuanto a los codemandados siguientes: Luis Maldonado Maldonado, Secundino Ortiz, Federico González y Francisco Martínez Declet. Apéndice, págs. 36–37.

(¹¹) Véase Minuta de la vista de 6 de diciembre de 2000, notificada a las partes el 11 de diciembre del mismo año; Apéndice, págs. 40–41.

ria a su favor. Adujo, en esencia, que los hechos no refutados demostraban que la finca objeto del pleito le pertenece a los descendientes de don Gregorio y doña Belén, ya que ni el Sr. Francisco Maldonado Hernández ni sus causahabientes habían poseído dicho inmueble en concepto de dueños, sino más bien por *la mera tolerancia del causante y, luego, de sus herederos.* En esa misma fecha, la sucesión demandante solicitó además al foro primario que celebrara una vista evidenciaria antes de resolver el asunto sobre la alegada prescripción de la acción promovida por ellos. Asimismo, sostuvo que dicho asunto tampoco debía dirimirse hasta tanto la sucesión demandada replicara a la solicitud de sentencia sumaria y contestara los interrogatorios y el requerimiento de producción de documentos dirigidos a ésta por conducto de la codemandada, Sra. Pura Maldonado Suárez.

El 10 de mayo de 2002 la parte interventora presentó una moción, uniéndose a la solicitud de la sucesión demandante para que se dictara sentencia sumaria. *La parte promovida nunca se opuso a la solicitud de sentencia sumaria presentada.*

El 11 de julio de 2002 el Tribunal de Primera Instancia ordenó la celebración de la conferencia con antelación al juicio para el 29 de octubre de 2002; sin embargo, la vista señalada nunca llegó a celebrarse porque el foro primario dictó sentencia el 14 de octubre de 2002, mediante la cual desestimó sumariamente la acción incoada por la sucesión demandante por el fundamento de *prescripción.*([12])

De la referida sentencia surgen como hechos no controvertidos, entre otros, los siguientes: (i) que don Gregorio Maldonado Ortiz y su esposa, doña Belén Hernández Bracero, fallecieron *intestados* los días 11 de febrero de 1943 y 19 de junio de 1935, respectivamente; (ii) que la finca litigiosa constituye la totalidad del caudal relicto dejado por

---

([12]) Apéndice, págs. 97–109. El archivo en autos de copia de la notificación de la referida sentencia a las partes se efectuó el 31 de octubre de 2002.

ellos; (iii) que éstos procrearon quince hijos, entre ellos, los Sres. Fidel y Francisco Maldonado Hernández, quienes "siempre vivieron en la casa de sus padres, hasta sus respectivos fallecimientos ... continuando ocupando la misma sus respectivas familias"; (iv) que las contribuciones sobre la finca, "correspondientes al período de 1952 al 1975, fueron pagadas por Elías Maldonado, a principios de 1989",[13] y (v) que la declaratoria de herederos de don Gregorio y doña Belén nunca ha sido tramitada.

En vista de lo anterior, y apoyándose en los pronunciamientos de este Tribunal en *Arrieta v. Chinea Vda. de Arrieta*, 139 D.P.R. 525 (1995), el foro primario concluyó que la reclamación promovida por los miembros de la sucesión demandante era verdaderamente de petición de herencia, y no de partición de herencia, puesto que éstos nunca habían aceptado la herencia de don Gregorio ni habían establecido su condición de herederos ni eran partícipes de una comunidad hereditaria. Por ello ser así, el Tribunal de Primera Instancia subrayó que la acción de petición de herencia está sujeta a un término prescriptivo de treinta años que ha de computarse desde que el "heredero aparente" entra en posesión de los bienes que componen el caudal relicto y que los "herederos aparentes" en este caso, los Sres. Francisco y Fidel Maldonado Hernández, habían adquirido la posesión de la finca en cuestión al morir su padre el 11 de febrero de 1943, aceptando tácitamente la herencia. Según el foro primario, fue en la antedicha fecha que comenzó a transcurrir el plazo prescriptivo, el cual venció el 11 de febrero de 1973.

Según el foro primario, ninguno de los demandantes realizó, durante el referido plazo, ningún acto conducente a establecer su condición de heredero de don Gregorio y doña Belén, sino que esperaron por más de cincuenta y dos años

---

[13] El Sr. Elías Maldonado Hernández era otro de los coherederos de don Gregorio y doña Belén, quien luego de satisfacer la referida carga contributiva, les cursó una factura a los restantes miembros de la sucesión demandante en cobro de su correspondiente participación.

para entonces incoar el pleito de marras. *En consecuencia, desestimó sumariamente su acción por estar prescrita.*

De otra parte, el foro primario advirtió que, aun tomando como punto de partida para la computación del término prescriptivo la fecha del fallecimiento de don Francisco Maldonado Hernández ocurrida el 29 de mayo de 1965, tal como pretendían los demandantes, la acción también estaba prescrita y procedía su desestimación.

Inconformes con la decisión del foro primario, tanto la sucesión demandante como los interventores acudieron oportunamente ante el entonces Tribunal de Circuito de Apelaciones mediante recursos apelativos separados. La sucesión demandante formuló allí los señalamientos de error siguientes:

### Primer Error
Comete error el Honorable Tribunal al dictar sentencia desestimando la demanda de división de herencia radicada por los demandantes.

### Segundo Error
Comete error el Honorable Tribunal al considerar esta acción de partición de herencia como una petición de herencia.

### Tercer Error
Comete error el Honorable Tribunal al no declarar con lugar la sentencia sumaria y utilizar el mecanismo de la Regla 36, guarda silencio sobre la solicitud de sentencia sumaria, que no está contestada ni se celebra vista.

### Cuarto Error
Comete error el Honorable Tribunal al declarar con lugar la moción de desestimación de la parte demandada, Sucesión de Francisco Maldonado Hernández, por haber poseído la propiedad por más de 30 años. Petición de *certiorari* Núm. CC-2003-696, Apéndice, págs. 132–133.

Entre otras cosas, la sucesión demandante se reiteró allí en su planteamiento de que el Sr. Francisco Maldonado Hernández y sus sucesores nunca ejercieron actos de dominio, en concepto de dueños, sobre la finca litigiosa tales como cultivarla, arrendarla o pagar las contribuciones territoriales sobre ésta, o ambas.

Sostuvo, además, que a todos y a cada uno de los demandantes y demandados se les había reconocido ya como herederos de don Gregorio, por lo que la acción civil procedente era la de partición de herencia. Finalmente, destacó el hecho de que no se hubiera realizado durante el pleito una vista evidenciaria sobre las circunstancias en que el Sr. Francisco Maldonado Hernández, y posteriormente sus causahabientes, adquirieron la posesión de la finca litigiosa, e incluso si dicha posesión fue pública, pacífica y en concepto de dueños exclusivos.

Por su parte, los interventores señalaron en su recurso ante el foro intermedio apelativo los errores siguientes:

### Primer Error

Erró el tribunal de instancia al formular determinaciones de hechos probados sin que se haya realizado una vista en su fondo, ni desfile de prueba por las partes.

### Segundo Error

Erró el tribunal de instancia al resolver que la petición de petición [sic] de herencia estaba prescrita, basando su dictamen de manera literal y automática en lo resuelto en *Arrieta v. Chinea Vda. de Arrieta*, 139 DPR 464 (1995), controversia claramente distinguible del presente caso.

### Tercer Error

Erró el tribunal de instancia al no considerar que lo resuelto en *Arrieta v. Chinea Vda. de Arrieta*, supra, constituyó la primera oportunidad del Tribunal Supremo de pautar varios asuntos relativos a la petición de herencia, por supuesto con efecto prospectivo, ilustración que conforme a los hechos debidamente probados en dicho caso, muy distinto al presente caso, hicieron innecesario considerar el efecto de la interrupción de la prescripción, y no menos importante, el continuo reconocimiento de todas las partes, y la comunidad circundante, de que éstos formaban una comunidad como herederos de los causante [sic] Gregorio Maldonado Ortiz y Belén Hernández Bracero, y en tal carácter eran dueños en común pro indiviso de la propiedad en cuestión. Petición de *certiorari* Núm. CC-2003-714, Apéndice, pág. 204.

Previa moción de la parte allí apelada, el foro interme-

dio apelativo ordenó la consolidación de ambos recursos apelativos. Por estar íntimamente relacionados los señalamientos de error en ambos recursos, el tribunal intermedio apelativo decidió discutirlos conjuntamente y redujo la controversia ante sí a determinar si procedía dictar sentencia sumaria desestimatoria de la acción promovida por los allí apelantes.

El 17 de junio de 2003 el entonces Tribunal de Circuito de Apelaciones dictó sentencia, confirmando el dictamen del foro primario.[14] Al así proceder, el foro intermedio apelativo resolvió, *inter alia*, que los allí apelantes perseguían establecer con su acción, *por* primera vez, su condición de herederos frente a aquellos que retenían el caudal relicto de don Gregorio y doña Belén. El foro *a quo* indicó que no encontró evidencia en el expediente ante sí que demostrara que los apelantes hubieran realizado acto alguno dirigido a reclamar su condición de herederos. Concluyó que "[s]iendo ello así, no procede un pedido de partición de herencia, sino la de petición de herencia. Determinó que dicha acción está *prescrita*".[15] (Énfasis suplido.)

El foro intermedio apelativo subrayó que la sucesión demandante contaba con un término prescriptivo de treinta años para presentar ante los tribunales su acción de petición de herencia; plazo que, de acuerdo con la sentencia aquí recurrida, comenzó a transcurrir el 11 de febrero de 1943, fecha en que falleció don Gregorio Maldonado Hernández y a partir de la cual su heredero, el Sr. Francisco Maldonado Hernández, entró en posesión de la finca. Concluyó que ya que el referido término expiró aproximadamente el 11 de febrero de 1973, el tribunal recurrido determinó que la acción entablada por la sucesión allí apelante estaba prescrita.[16] En definitiva, señaló que

[14] Notificada a las partes el 25 de junio de 2003.

[15] Véase Apéndice, pág. 319.

[16] Íd., pág. 322.

[e]xtinguida la acción dirigida a hacer valer el derecho, tan sólo subsiste entre las partes una obligación natural o moral no reclamable por la vía judicial, como en este caso.[17] (Citas omitidas.)

La sucesión demandante solicitó oportunamente la reconsideración del dictamen del tribunal intermedio apelativo, sin tener éxito en dicha gestión.[18]

En desacuerdo, tanto la sucesión demandante como los interventores, acudieron separadamente ante nos mediante sendas peticiones de *certiorari*, formulando ambas partes idénticos señalamientos de error, a saber:

1. Erró el Tribunal de Circuito de Apelaciones en determinar en qué momento comenzó a transcurrir el término de treinta años aplicable a la acción de petición de herencia en este caso.
2. Erró el Tribunal de Circuito de Apelaciones en resolver que no procede en este caso una acción de partición de herencia.
3. Erró el Tribunal de Circuito de Apelaciones en desestimar la acción objeto de este recurso por la vía sumaria.[19]

Los peticionarios arguyen, básicamente, que en el presente caso existen claras controversias en cuanto a los hechos materiales siguientes: (i) si el Sr. Francisco Maldonado Hernández, y posteriormente sus herederos, adquirieron efectivamente la posesión de la finca litigiosa a título de dueños únicos y con ánimo de excluir a los demás miembros de la sucesión de don Gregorio Maldonado, y, de haber sido así, en qué momento la sucesión demandada realizó una expresión pública que exteriorizara su intención de hacer suya la finca, con exclusión de la parte demandante, como para que comenzara a transcurrir el término prescriptivo de treinta años para instar una acción

---

[17] Íd., pág. 323.

[18] Véase Resolución del entonces Tribunal de Circuito de Apelaciones de 7 de agosto de 2003, archivada en autos copia de su notificación a las partes el 14 de agosto del mismo año. Apéndice, pág. 326.

[19] Véase Petición de *certiorari* Núm. CC-2003-696, págs. 7–8; Petición de *certiorari* Núm. CC-2003-0714, pág. 9.

de petición de herencia,[20] y (ii) si las gestiones practicadas por algunos de los miembros de la sucesión demandante, incluyendo el pago de las cargas contributivas sobre la finca y aquellas dirigidas a la venta del inmueble o a la división del caudal relicto, pueden estimarse como una aceptación tácita de la herencia en disputa, en cuyo caso su condición de herederos ya había sido establecida y la acción civil procedente es la de partición de herencia, la cual es imprescriptible. En vista de lo anterior, los peticionarios sostienen que era necesaria la celebración de una vista evidenciaria ante el foro primario para dilucidar estos extremos.

Por su parte, los aquí recurridos se reafirman en su posición de que la reclamación ante nos es verdaderamente una acción de petición de herencia, y no de partición de herencia, y que ésta se extinguió por el lapso de tiempo fijado en la prescripción. Alegan que, con anterioridad a la presentación de la demanda de autos, éstos poseyeron la finca en litigio en concepto de dueños exclusivos por más de cincuenta y dos años, ejerciendo actos de dominio sobre ésta y percibiendo ellos únicamente los frutos y beneficios de la referida propiedad, sin que los demandantes realizaran gestión alguna para la reclamación de la herencia. Por último, y contrario a lo alegado por los peticionarios, la parte recurrida sostiene que "no hay acto de expresión pública más contundente", que exteriorice su ánimo de hacer suya la finca litigiosa, que haberla poseído y administrado de forma exclusiva desde 1943.

Aclarado lo anterior, examinemos con detenimiento dichos planteamientos.

---

[20] Situaciones que, como cuestión de hecho, los peticionarios disputan que hayan ocurrido.

## II

En limitadas ocasiones hemos tenido la oportunidad de expresarnos sobre la acción de petición de herencia. Esta acción no está reglamentada en forma específica en el Código Civil. No obstante, su presencia es indiscutible, pues surge de los Arts. 264 y 970 de dicho cuerpo estatutario.[21]

■ En *Arrieta v. Chinea Vda. de Arrieta*, supra, pág. 537, expresamos que conforme a la doctrina civilista, "la *actio petitio hereditatis* es la acción mediante la cual una persona reclama el reconocimiento de su condición de heredero y la consiguiente restitución de lo que le corresponde del caudal hereditario".[22] Roca Sastre define esta acción de la forma siguiente:

> Es la que compete al heredero real contra quienes posean todos o parte de los bienes hereditarios a título de herederos del mismo causante o sin tener título alguno, a fin de obtener dicho heredero la restitución de tales bienes, a base de la comprobación o reconocimiento de que a él corresponde la cualidad de heredero.[23]

■ En esta acción no se discute la titularidad del causante sobre los bienes relictos, sino la condición de heredero del actor.[24] Para ejercer esta acción, es necesario que: (1) el autor funde su derecho en el título de heredero; (2) la acción se dirija contra el que posee todos o una parte de los bienes de la herencia, y (3) que la acción no haya prescrito.

---

[21] 31 L.P.R.A. secs. 1044 y 2807. Véase *Arrieta v. Chinea Vda. de Arrieta*, 139 D.P.R. 525, 537 (1995).

[22] E. González Tejera, *Derecho de sucesiones: la sucesión intestal*, San Juan, Ed. U.P.R., 2001, T. 1, pág. 282.

[23] R.M. Roca Sastre, *Estudios de Derecho Privado*, Madrid, Ed. Rev. Der. Privado, 1948, pág. 376, citado en *Arrieta v. Chinea Vda. de Arrieta*, supra.

[24] J. Santos Briz y otros, *Tratado de Derecho Civil: derecho de sucesiones*, Barcelona, Ed. Bosch, 2003, T. 6, pág. 141; X. O'Callaghan Muñoz, *Compendio de Derecho Civil: derechos reales e hipotecario*, Madrid, Ed. Rev. Der. Privado, 1985, T. III, pág. 110.

En cuanto al tema de la prescripción, en *Alonso v. Muñoz*, 76 D.P.R. 549 (1954), este Tribunal mencionó que la acción de petición de herencia es prescriptible, y en *Arrieta v. Chinea Vda. de Arrieta*, supra, resolvió de modo expreso que ésta prescribe a los treinta años. En ese último caso, también expresamos que el término prescriptivo de la acción de petición de herencia *"comienza a transcurrir desde que el heredero aparente entró en la posesión de los bienes de la herencia"*, posición que ha asumido casi la totalidad de la jurisprudencia española y reconocidos tratadistas de esa jurisdicción. (Énfasis suplido.)[25] Entiéndase que para estos efectos el heredero aparente se refiere al que entró en posesión material del bien o al que retiene el patrimonio hereditario. González Tejera nos expresa, comentando el caso *Arrieta v. Chinea Vda. de Arrieta*, supra, en relación con cuándo comienza a transcurrir el término prescriptivo de esta acción, lo siguiente:

> … los treinta años empiezan a contar desde que el heredero aparente inició la posesión material de los bienes de la herencia y exteriorizó su intención de hacerlos suyos, esto es, desde que inició la posesión con ánimo de excluir a todos los demás interesados en los bienes del causante, y se comportó como dueño, negándole al heredero real y promovente su cualidad de heredero o alegando un título hereditario superior al del demandante. (Énfasis suplido.)[26]

En la sentencia del 23 de diciembre de 1971, el Tribunal Supremo de España resolvió que el momento inicial para el cómputo del término prescriptivo de treinta años de la acción de petición de herencia no se produce con la muerte del causante, sino por el acto en que el heredero aparente exteriorizó, de manera ostensible y solemne, su carácter de poseedor de la herencia en concepto de dueño único y ex-

---

[25] *Arrieta v. Chinea Vda. de Arrieta*, supra, pág. 540.

[26] González Tejera, *op. cit.*, págs. 288–289.

clusivo de ella.(²⁷) O sea, el término comienza a transcurrir desde que el que está poseyendo el bien exterioriza su intención de hacerlo suyo de forma exclusiva, negando a los demás el carácter de herederos.(²⁸)

■ La *acción de petición de herencia* es distinta a la *acción de partición de herencia*; se trata de dos procedimientos judiciales distintos que persiguen finalidades diferentes.(²⁹) Veamos las particularidades de la acción de partición de herencia que la distinguen de la referida acción de petición.

■ El Código Civil de Puerto Rico regula la acción de partición de herencia en sus Arts. 1005 al 1020.(³⁰) Esta acción es el procedimiento judicial adecuado para ponerle fin al estado de indivisión de una herencia, por lo que su propósito es obtener la terminación de la comunidad hereditaria.(³¹) Roca Sastre la define de la forma siguiente:

> La partición es aquel acto jurídico, unilateral o plurilateral, necesario e irrevocable, de naturaleza declarativa, compuesto de un conjunto ordenado de operaciones, verificadas sobre ciertas bases o supuestos de hecho y de derecho, y en el cual, después de determinarse el activo y el pasivo de la masa hereditaria y de proceder a su avalúo y liquidación, se fija el haber de cada partícipe, se divide el caudal partible y se adjudica cada lote de bienes formado a cada heredero respectivo, provocando la transformación de las participaciones abstractas de los coherederos sobre el patrimonio relicto (derecho hereditario) en titularidades concretas sobre bienes determinados (dominio o propiedad exclusiva u ordinaria).(³²)

---

(²⁷) S. de 23 de diciembre de 1971, Núm. 5401, XXXVIII (Vol. II) Repertorio de Jurisprudencia 3963.

(²⁸) S. de 2 de junio de 1987, Núm. 4024, LIV (Vol. III) Repertorio de Jurisprudencia 3833.

(²⁹) *Arrieta v. Chinea Vda. de Arrieta*, supra, pág. 534.

(³⁰) 31 L.P.R.A. secs. 2871–2886.

(³¹) *Arrieta v. Chinea Vda. de Arrieta*, supra, pág. 534.

(³²) R.M. Roca Sastre, *Estudios de Derecho Privado: Sucesiones*, Madrid, Ed. Rev. Der. Privado, 1948, Vol. II, pág. 371.

■ Es requisito esencial que la persona que pretenda incoar esta acción debe tener ya la condición de heredero. La acción de partición de herencia no es la vía judicial disponible a un descendiente del causante que pretende reclamar su carácter de heredero frente a los que están en posesión de la herencia. Manresa nos explica que para poder ejercitar esta acción, tienen que estar presentes dos condiciones precisas: (1) el descendiente tiene que haber aceptado la herencia, teniendo un derecho actual y definitivo sobre ésta, y (2) que el heredero tenga la libre administración y disposición de sus bienes.[33] El hecho de que una persona se crea heredero no es suficiente para pedir la partición de una herencia. Es necesario que efectivamente sea heredero y tenga libre disposición de sus bienes.[34]

■ En nuestra jurisdicción se ha reconocido que un descendiente consolida plenamente su carácter de heredero al aceptar la herencia.[35] En *Arrieta v. Chinea Vda. de Arrieta*, supra, pág. 533, citando a *Rivera Rivera v. Monge Rivera*, supra, señalamos lo siguiente:

> ... con la muerte del causante se produce la apertura de su sucesión, y con ella nace, para determinados parientes del difunto, el derecho *a adquirir* la propiedad y la posesión de los bienes que constituyen el caudal hereditario. El patrimonio relicto *queda a disposición de los referidos parientes*, quienes sólo pueden adquirir la titularidad sobre éste si aceptan la herencia de su causante.

■ Nos dice Vélez Torres, interpretando nuestro Código Civil, que tan pronto ocurre la muerte del causante, el heredero llamado por testamento o por la ley adquiere la posesión de los bienes de la herencia, pero no adquiere la

---

[33] J.M. Manresa, *Comentarios al Código Civil Español*, 7ma ed. rev., Madrid, Ed. Reus, 1995, T. VII, pág. 695, citado en *Arrieta v. Chinea Vda. de Arrieta*, supra, pág. 535.

[34] F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. VI, págs. 40–41.

[35] *Rivera Rivera v. Monge Rivera*, 117 D.P.R. 464 (1986); *Arrieta v. Chinea Vda. de Arrieta*, supra.

titularidad del patrimonio relicto hasta que acepte la herencia.([36]) El Art. 369 del Código Civil de Puerto Rico,([37]) que trata sobre la transmisión de la posesión de bienes hereditarios, dispone como sigue:

> La posesión de los bienes hereditarios se entiende transmitida al heredero sin interrupción y desde el momento de la muerte del causante, *en el caso de que llegue a adirse*([38]) *la herencia.*
>
> El que válidamente repudia una herencia se entiende que no la ha poseído en ningún momento. (Énfasis suplido.)

■ Gonzalez Tejera expresa, sobre ese tema, lo siguiente:

> ... lo que sucede en Puerto Rico es que la condición de heredero no se produce en forma automática con la muerte del causante. Lo que se produce con el deceso es el llamamiento del heredero potencial para que decida qué opción seleccionará dentro de las varias que el ordenamiento le abre a su disposición.([39])

■ Por lo tanto, los bienes de la herencia no pasan al patrimonio del heredero hasta que éste acepte la herencia, ya sea esta aceptación expresa o tácita.([40]) La aceptación expresa es la que se hace en documento público o privado.([41]) La aceptación tácita "es la que se hace por actos que suponen necesariamente la voluntad de aceptar, o que no habría derecho a ejecutar sino con la cualidad de heredero".([42]) Es indispensable, para que exista una aceptación tácita, que los actos que realice el heredero supongan ineludiblemente la intención o voluntad de aceptar, o

---

([36]) J.R. Vélez Torres, *Curso de Derecho Civil: derecho de sucesiones*, 2da ed. rev., San Juan, Ed. Rev. Jur. U.I.A., 1992, T. IV, Vol. III, pág. 443.

([37]) 31 L.P.R.A. sec. 1443.

([38]) Según el *Vox: diccionario general ilustrado de la lengua española*, 3ra ed. ampl.., 1976, pág. 33, el término "adir" significa "aceptar".

([39]) González Tejera, *op. cit.*, págs. 177–178.

([40]) 31 L.P.R.A. sec. 2781; *Rivera Rivera v. Monge Rivera*, supra.

([41]) 31 L.P.R.A. sec. 2781.

([42]) Íd.; *González Campos v. González Mezerene*, 139 D.P.R. 228, 248 (1995).

sea, *que se trate de actos que sólo un propietario podría realizar.*[43]

El Art. 954 del Código Civil de Puerto Rico[44] expresa ciertas circunstancias específicas y representativas de aceptación tácita. Éste dispone de la forma siguiente:

Entiéndese aceptada la herencia:

(1) Cuando el heredero vende, dona o cede su derecho a un extraño, a todos sus coherederos o a alguno de ellos.

(2) Cuando el heredero la renuncia, aunque sea gratuitamente, a beneficio de uno o más de sus coherederos.

(3) Cuando la renuncia por precio a favor de todos sus coherederos indistintamente; pero si esta renuncia fuere gratuita y los coherederos a cuyo favor se haga son aquéllos a quienes debe acrecer la porción renunciada, no se entenderá aceptada la herencia.

No obstante, los actos de mera conservación o administración de los bienes de la herencia *no implican aceptación*, es decir, no convierten al descendiente o al llamado a heredar en heredero.[45] En *Rodríguez v. Ubides Vda. de Font*, 58 D.P.R. 252 (1941), resolvimos que la formación de inventario de los bienes relictos por el albacea testamentario, *su pago de la contribución de la herencia y el recibo por el heredero de parte de las rentas producidas por esos bienes*, no implican por sí solos una aceptación de la herencia por el heredero.

Por lo tanto, tras haber aceptado la herencia, ya sea de forma expresa o tácita, un heredero puede pedir la partición de ésta. ¿Tiene el heredero un término determinado para presentar una acción de partición de herencia? El Art. 1865 del Código Civil dispone lo siguiente:

---

[43] G. Velázquez, *Teoría del Derecho Sucesorio Puertorriqueño*, 2da ed. rev., San Juan, Equity Publishing Corp., 1968, pág. 57.

[44] 31 L.P.R.A. sec. 2782.

[45] 31 L.P.R.A. sec. 2781; *Rivera Rivera v. Monge Rivera*, supra.

*No prescribe entre coherederos*, condueños o propietarios de fincas colindantes *la acción para pedir la partición de la herencia*, la división de la cosa común o el deslinde de las propiedades contiguas. (Énfasis suplido.)[46]

 La regla general es que la acción de partición de herencia es imprescriptible. No obstante, en *Alonso v. Muñoz*, supra, discutimos el asunto de que esta imprescriptibilidad expresada en el citado Art. 1865, está subordinada a las disposiciones contenidas en los Arts. 376, 1841 y 1859 del Código Civil,[47] referentes a la adquisición del dominio en virtud de una posesión en concepto de dueño, no interrumpida durante treinta años. Estos artículos disponen:

*Sec. 1462. Posesión necesaria para adquirir el dominio*
Sólo la posesión que se adquiere y se disfruta en concepto de dueño puede servir de título para adquirir el dominio.

*Sec. 5262. Carácter de la posesión*
La posesión ha de ser en concepto de dueño, pública, pacífica y no interrumpida.

*Sec. 5280. Prescripción por posesión sin título ni buena fe*
Prescriben también el dominio y demás derechos reales sobre los bienes inmuebles por su posesión no interrumpida durante treinta (30) años, sin necesidad de título ni de buena fe, y sin distinción entre presentes y ausentes, salvo la excepción determinada en la sec. 1653 de este título.

 En el caso antes mencionado, armonizando los artículos citados del Código Civil, expresamos lo siguiente:

[N]o prescribe entre coherederos o condueños la acción para pedir la partición o división siempre y cuando que exista una situación total de proindivisión, pero si uno o más coherederos o condueños han poseído en concepto de dueño por más de treinta años, en forma no interrumpida, ello implica la ausencia de una verdadera proindivisión y la inaplicabilidad del art. 1865.[48]

---

(46) 31 L.P.R.A. sec. 5295.

(47) 31 L.P.R.A. secs. 1462, 5262 y 5280.

(48) *Alonso v. Muñoz*, 76 D.P.R. 549, 556 (1954).

██ La imprescriptibilidad de la acción de partición de herencia descansa en una posesión en común o pro indiviso, mas no puede invocarse cuando uno de los coherederos ha poseído la herencia en concepto de dueño y por tiempo suficiente para ganarla por prescripción.[49] Mientras uno de los coherederos posea la cosa pro indiviso, en concepto de coheredero, posee en nombre de todos y la acción de partición de herencia, tal como surge del Art. 1865 del Código Civil, *supra*, no prescribe y se puede pedir en cualquier momento. No obstante, si uno de los coherederos deja de poseer en concepto de coheredero o condueño y posee, *por más de treinta años*, una finca específica de la comunidad —o la totalidad de los bienes comunes— *en forma exclusiva y en nombre propio, percibiendo solamente él los beneficios, frutos y productos de tal finca o de tales bienes sin que los demás condueños participen en los beneficios y las cargas de tal posesión, entonces ese condueño o coheredero estaría poseyendo en concepto de dueño y podría adquirir el dominio en virtud de la prescripción adquisitiva extraordinaria, por usucapión.*[50]

██ Por lo tanto, no puede invocarse la imprescriptibilidad de la acción de partición de herencia si alguno de los coherederos cumple cabalmente con los requisitos de la usucapión o prescripción adquisitiva. Vélez Torres define *usucapión* de la forma siguiente:

> ... es una consecuencia de la posesión civil mantenida durante un determinado número de años. Consiste en la adquisición del dominio u otro derecho real poseíble por medio de la posesión civil mantenida durante el tiempo y con arreglo a las condiciones que requiere la ley. Constituye un modo originario de adquirir la propiedad y otros derechos reales, pues el adquirente no deriva su derecho de un anterior dueño mediante un acto traslativo del derecho, como lo sería un contrato o un testamento, sino que adquiere por el sólo hecho de poseer en

---

[49] Íd.; Manresa, *op. cit.*, 6ta ed. rev., 1973, T. XII, pág. 1190.

[50] *Alonso v. Muñoz*, supra, págs. 555–556.

determinado concepto (como dueño, usufructuario, titular de un predio dominante, etc.), durante determinado período de tiempo.[51]

■■■■■■ La usucapión puede ser ordinaria o extraordinaria. La que nos atañe en este caso es la extraordinaria, y para que ésta se perfeccione tienen que darse los requisitos siguientes: poseer el bien inmueble de forma *pública, pacífica*, en *concepto de dueño*, de *mala fe* y *sin justo título*, y de forma *ininterrumpida* durante *treinta años*.[52] La *posesión* requerida para adquirir el dominio de un bien inmueble mediante usucapión es la *civil* y no la natural. El Código Civil de Puerto Rico, en su Art. 360 (31 L.P.R.A. sec. 1421), define "posesión natural" como la tenencia de una cosa o el disfrute de un derecho, y "posesión civil" como la tenencia de una cosa o el disfrute de un derecho, unidos a la *intención de hacer suya la cosa o el derecho*. La usucapión requiere que la posesión sea en concepto de dueño, o sea, que se trata de una posesión civil. En una Sentencia de 7 de febrero de 1997, el Tribunal Supremo de España expresó lo siguiente:

> ... para que pueda originarse la prescripción adquisitiva, incluso la extraordinaria, como medio de adquirir el dominio, se requiere, no sólo el transcurso de los 30 años sin interrupción en la posesión, sino también que esta posesión no sea simple tenencia material o la posesión natural, sino que sea la civil, es decir, la tenencia unida a la intención de hacer la cosa como suya, en concepto de dueño.[53]

■■■■■ Por otro lado, en relación con el concepto de posesión en concepto de dueño, el Tribunal Supremo de Puerto Rico, en *Dávila v. Córdova*, supra, págs. 143–147, expresó lo siguiente:

---

[51] J.R. Vélez Torres, *Curso de Derecho Civil: los bienes, los derechos reales*, Madrid, Offirgraf, 1983, T. II, pág. 263.

[52] 31 L.P.R.A. secs. 5262 y 5280; *Dávila v. Córdova*, 77 D.P.R. 136 (1954).

[53] S. de 7 de febrero de 1997, Núm. 685, LXIII (Vol. I) Repertorio de Jurisprudencia (1062).

El primer principio que debemos dejar establecido es que nunca se considerará como una posesión en concepto de dueño, a los efectos de la prescripción extraordinaria, aquella posesión que se derive de la autorización, permiso o licencia concedida por el dueño, pero sí se considerará como una posesión en concepto de dueño, a los efectos de la prescripción extraordinaria, aquella posesión que se derive de la tolerancia del dueño, pues tal tolerancia, como algo distinto a la mera tolerancia, se convierte en realidad de verdad y de derecho, en el abandono de un derecho por parte del dueño, y el fin social que persigue la prescripción, es, que no haya derechos abandonados que puedan afectar al crédito territorial, a la productividad, o al orden jurídico de la propiedad nacional.

El segundo principio que debemos dejar establecido es que siempre se considerará como una *posesión en concepto de dueño*, a los efectos de la prescripción extraordinaria, la posesión atribuída al poseedor por la creencia pública y general, en el sentido, que el poseedor es dueño de la cosa poseída, independientemente de la creencia que sobre el particular pueda tener el propio poseedor.

El Código Civil expresamente establece que los actos de carácter posesorio ejecutados en virtud de licencia o por *mera tolerancia* del dueño del bien inmueble, no se pueden aprovechar para cumplir con la posesión necesaria para usucapir.[54] Entiéndase que el que está poseyendo por mera tolerancia no lo está haciendo en concepto de dueño, pues se trata de estar poseyendo en virtud de algún permiso concedido por el dueño de la propiedad. La persona que posee por mera tolerancia no podrá usucapir.

Por lo tanto, concluimos que la prescriptibilidad de la acción de petición de herencia y la imprescriptibilidad de la acción de partición de herencia están sujetas a que no se produzca la usucapión o prescripción adquisitiva. De constituirse la usucapión formalmente, cumpliéndose cabalmente todos los requisitos antes descritos, el heredero usucapiente adquirirá el dominio exclusivo del bien del caudal relicto, por lo que sería inoportuna o improcedente

---

[54] 31 L.P.R.A. sec. 5263; *Ortiz v. Dávila*, 31 D.P.R. 220 (1922).

184

la presentación de una acción de petición o partición de herencia.

## III

En reiteradas ocasiones, hemos expresado que la sentencia sumaria es un mecanismo procesal extraordinario y discrecional cuyo propósito principal es propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo.[55] La Regla 36 de Procedimiento Civil[56] provee para que pueda dictarse una sentencia de forma sumaria. Podrá dictarse una sentencia sumaria cuando no exista una controversia real sobre los hechos materiales y esenciales del caso en cuestión.[57] *Ante la más mínima duda o controversia sobre los hechos materiales y esenciales del caso, el tribunal resolverá en contra de la parte que solicita la sentencia sumaria y deberá celebrar un juicio en su fondo.*[58] La parte que la solicita tiene la obligación de demostrar la inexistencia de una controversia real sustancial sobre todo hecho material y esencial que a la luz del derecho sustantivo determinaría que se dicte sentencia a su favor.[59] La parte promovida opositora, para derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que controviertan los hechos materiales y esenciales.[60]

No obstante, el hecho de que no se presente

---

[55] *E.L.A. v. Cole*, 164 D.P.R. 6802 (2005); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 D.P.R. 599 (2000).

[56] 32 L.P.R.A. Ap. III.

[57] *Vera v. Dr. Bravo*, 161 D.P.R. 308 (2004); *Consejo de Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991).

[58] Íd.

[59] *E.L.A. v. Cole*, supra.

[60] *Vera v. Dr. Bravo*, supra; *Consejo de Tit. C. Parkside v. MGIC Fin. Corp.*, supra.

prueba que controvierta la presentada por el promovente, no significa necesariamente que procede la sentencia sumaria. *En los casos en que no exista una clara certeza sobre los hechos materiales y esenciales de la controversia, no procede una sentencia sumaria.*[61]

 En vista de que la sentencia sumaria es un remedio discrecional, su uso debe ser mesurado y sólo procede cuando el tribunal queda claramente convencido de que tiene ante sí documentos no controvertidos de los cuales surge que no existen controversias sobre hechos materiales y esenciales. "Una parte tiene derecho a un juicio plenario cuando existe la más leve o mínima duda en cuanto a cuáles son los hechos materiales y esenciales." [62] En casos anteriores hemos expresado lo siguiente:

> En términos generales, al dictar sentencia sumaria, el tribunal deberá: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquéllos que obren en el expediente del tribunal; (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) hayan alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan la moción, una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no procede.[63]

 El mecanismo procesal de sentencia sumaria no permite que el tribunal dirima cuestiones de credibilidad.[64] Un tribunal tampoco debe resolver sumariamente

---

[61] *García Rivera et al. v. Enríquez*, 153 D.P.R. 323 (2001).

[62] *Vera v. Dr. Bravo*, supra, pág. 334.

[63] *Vera v. Dr. Bravo*, supra, págs. 333–334; *Luan Invest. Corp. v. Rexach Const. Co.*, 152 D.P.R. 652, 665 (2000); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 913-914 (1994).

[64] *Vera v. Dr. Bravo*, supra; *García Rivera et al. v. Enríquez*, supra.

casos complejos o casos que involucren cuestiones de interés público.[65]

## IV

Los peticionarios señalaron tres errores en su recurso de *certiorari*. Por las razones que se expondrán, sólo entraremos a resolver en los méritos el error número tres. ¿Erró el Tribunal de Apelaciones al confirmar la determinación del Tribunal de Primera Instancia de desestimar la acción de los allí demandantes mediante sentencia sumaria?

Tal como mencionamos anteriormente y en numerosa jurisprudencia nuestra, *no se dictará sentencia sumaria en los casos donde existan controversias de hechos materiales y esenciales*. En el caso de autos están presentes ese tipo de controversias, por lo que el foro primario debió permitir el desfile de prueba suficiente para estar en posición de resolver la controversia trabada.

El Tribunal de Primera Instancia entendió que no existe en el caso de autos controversia en cuanto a hechos materiales y esenciales, y que ésta es sólo una controversia de derecho. Concentró sus esfuerzos en determinar si se trataba de una acción de petición de herencia y cuándo comenzaba a transcurrir el término prescriptivo de tal acción. Por su parte, los peticionarios aducen que existen claras controversias de hechos materiales y esenciales, por lo que era necesaria una vista evidenciaria. Les asiste la razón.

Existe controversia sobre el hecho de si los demandados que poseen la propiedad la han poseído por treinta años en *concepto de dueños* sin interrupción. No está claro si hubo algún acto indicativo que demostrase que los que estaban poseyendo el bien *exteriorizaron su intención de hacerlo suyo de forma exclusiva, con ánimo de excluir a todos los*

---

[65] *Vera v. Dr. Bravo*, supra.

*demás, como para que comenzara a transcurrir el término
prescriptivo de treinta años para instar una acción de peti-
ción de herencia.* También está en controversia el aspecto
de si los demandados que están poseyendo la propiedad
están disfrutándola en concepto de dueños exclusivos o por
mera tolerancia del resto de los coherederos. Si están por
la mera tolerancia o permiso de los demás coherederos, no
están poseyendo en concepto de dueños, por lo que no pue-
den usucapir. Los demandados alegaron ante el foro prima-
rio haber poseído, administrado, cultivado la finca en con-
cepto de dueños por más de cincuenta años y haber
percibido solamente ellos los beneficios, frutos y productos
de ésta.[66] Por su parte, los demandantes, aquí peticiona-
rios, alegan que los demandados, aquí recurridos, nunca
han poseído la finca en carácter de dueños únicos, sino
como coherederos, por la mera tolerancia y autorización de
los demás coherederos. Es necesario el desfile de prueba
para poder establecer en qué concepto los demandados po-
seyeron o poseen la propiedad, si en concepto de dueños o
en concepto de herederos, bajo la mera tolerancia de los
demás coherederos. Esta determinación es esencial para
poder establecer si se produjo la usucapión y si el término
de prescripción de la acción de petición de herencia co-
menzó a transcurrir.

Además, está controvertido si los demandantes acepta-
ron la herencia o no; si realizaron gestiones que podrían
considerarse como una aceptación tácita de la herencia. Es
imprescindible precisar específicamente, basándose en los
actos individuales de cada demandante, quiénes pudieron
haber aceptado la herencia y quiénes no. Esta determina-
ción es esencial para establecer quienes pudieron haber
adquirido la condición de herederos y si la acción proce-
dente era la de partición o de petición de herencia.

Concluimos que es necesario el desfile de prueba para
que el Tribunal de Primera Instancia pueda determinar si

---

[66] Alegato de la recurrida, págs. 4 y 5, presentado el 23 de enero de 2004.

hubo aceptación de la herencia por los demandantes. De haberse dado la aceptación, la acción procedente sería la de partición de herencia y no la de petición, la cual, tal como vimos, como regla general, no prescribe, a menos que los coherederos que poseen la propiedad demuestren que la han usucapido por cumplir con todos los requisitos exigidos por ley. De no demostrarse que hubo aceptación de la herencia por parte de los demandantes, entonces la acción procedente sería la petición de herencia y tiene que quedar establecido si el término prescriptivo de dicha acción comenzó a transcurrir y cuándo.

El Tribunal de Primera Instancia dictaminó en forma sumaria que se trataba de una acción de petición de herencia y no de partición, y que el término prescriptivo de ésta comenzó a transcurrir el 11 de febrero de 1943, fecha cuando murió don Gregorio Maldonado Ortiz, y su heredero, Sr. Francisco Maldonado Hernández, entró en posesión de la finca.([67]) Erró el foro apelativo intermedio al confirmar al foro primario. El Tribunal de Primera Instancia debe formular sus determinaciones de hechos sobre la base de toda la evidencia desfilada para tomar su determinación final. El tercer error señalado sí fue cometido por el Tribunal de Apelaciones.

Los primeros dos errores señalados no los discutiremos en los méritos, pues son asuntos que el Tribunal de Primera Instancia evaluará a la luz de la prueba que se habrá de desfilar en el juicio en su fondo.

## V

Por los fundamentos expuestos, *se revoca la sentencia recurrida, emitida por el Tribunal de Apelaciones. Se ordena al foro aquí recurrido devolver el presente caso al Tribunal de Primera Instancia para la celebración del juicio en su fondo.*

---

([67]) Apéndice, págs. 108 y 322.

El Juez Asociado Señor Fuster Berlingeri disintió con una opinión escrita.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

Me veo obligado a disentir de la opinión mayoritaria en el caso de autos por entender que los dictámenes del Tribunal de Apelaciones y del Tribunal de Primera Instancia aquí *fueron correctos*, por lo que en mi criterio la mayoría del Tribunal se ha equivocado al revocarlos.

Es cierto que el foro de instancia emitió una sentencia sumaria en este caso sin celebrar una vista que había señalado antes. Pero ese dato por sí solo no invalida la sentencia dictada. Ello es así porque, por virtud de los procedimientos que sí se celebraron, existían ya hechos comprobados suficientes para dictar la sentencia sumaria que luego el foro apelativo correctamente confirmó.

La propia mayoría del Tribunal reconoce en su opinión el hecho crucial de que la parte demandante en este caso, que no estaba en posesión del bien hereditario, *no hizo, además, absolutamente nada durante cincuenta y dos años para reclamar su herencia*. Conforme a lo resuelto en *Arrieta v. Chinea Vda. de Arrieta*, 139 D.P.R. 525 (1995), y a los extensos fundamentos doctrinales que allí se citan —que la mayoría reitera en su propia opinión— la acción de la parte demandante, que constituía necesariamente una petición de herencia, estaba *prescrita*, como bien lo resolvieron los foros *a quo*.

Ese hecho jurídico innegable no queda contradicho de ningún modo por alguno que otro acto aislado de los demandantes de pagar algunas contribuciones de la propiedad con respecto a la finca en cuestión. Ello es así porque desde *Rodríguez v. Ubides Vda. de Font*, 58 D.P.R. 252 (1941), en Derecho es claro que tales actos no constituyen

por sí solos siquiera una aceptación tácita de la herencia. Sencillamente los demandantes en este caso nunca aceptaron la herencia.

Por ende, dichos demandantes, aunque tuviesen vocación sucesoria, nunca llegaron a tener la condición de herederos, por lo que su acción aquí fue inexorablemente una *petición de herencia*, sujeta a un término prescriptivo de treinta años. No existe fundamento válido alguno en este caso para estimar que la acción de los demandantes podría considerarse como una de *partición de herencia*.

El grave error que comete la mayoría en su opinión es el de estimar que porque el foro de instancia no recibió toda la prueba necesaria para resolver si había mediado *usucapión* aquí, dicho foro no podía adjudicar la cuestión de la prescripción de la referida acción de petición de herencia. Ello podría ser correcto si en este caso hubiese alguna cuestión relativa a que *la parte demandante* tenía derecho sobre la finca en controversia, por razón de usucapión. Pero como en el caso de autos la única parte con algún posible derecho de usucapión sobre la finca referida es la *parte demandada*, no era de ningún modo necesario resolver lo de la usucapión para poder determinar que la acción de petición de herencia de los demandantes estaba prescrita, como correctamente lo hicieron el Tribunal de Apelaciones y el Tribunal de Primera Instancia en este caso.

En resumen, pues, este caso es realmente muy sencillo, y toda la extensa disquisición doctrinal en la opinión mayoritaria sobre derecho sucesorio —muy imprecisa y equívoca a veces— no cambia ese hecho. Aquí sólo hay unos *potenciales herederos* que no ejercieron su acción de petición de herencia *a tiempo*. Ello es jurídicamente así, sin que importe para nada si la parte demandada —herederos también en posesión del inmueble en cuestión— consolidó o no su título sobre la finca referida mediante usucapión. Eso, en efecto, resolvieron los foros *a quo* correctamente, por lo que procedía aquí era confirmar sus dictámenes.

Como la mayoría opta por otro curso de acción, yo disiento.