Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| José R. Cordero Soto<br><br>Peticionario<br><br><br>Ex Parte | KLCE202500552 | ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Civil Núm.: HU2023CV01208<br><br>Sobre: Aprobación de Cuaderno Particional |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de junio de 2025.

Comparece el señor José Reinaldo Cordero Soto (en adelante, peticionario) y nos solicita la revocación de la "Orden" emitida y notificada el 23 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de Humacao (en lo sucesivo, foro primario o TPI). Mediante el referido dictamen, el foro primario declaró con lugar una "Moción de Reconsideración", y en consecuencia, dejó sin efecto una imposición de honorarios a favor del peticionario por sus labores como contador partidor.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, expedimos el auto de *Certiorari* solicitado a los fines de revocar el dictamen recurrido mediante los fundamentos que expondremos a continuación.

**I.**

El 17 de agosto de 2023, el peticionario presentó una "Petición Sometiendo Cuaderno Particional". Adujo que, obraba

Número Identificador

SEN2025_____

como contador partidor de la Sucesión de Hiram Ignacio Pérez Beltrán (en adelante, Sr. Pérez Beltrán o causante), según fue nombrado por el causante en su testamento. Por ello, solicitó que, el foro primario adoptara como final y definitivo el "Cuaderno Particional" sometido, donde se presentó el inventario y avalúo del caudal relicto del causante.[1]

El 25 de agosto de 2023, Enid Pérez Soto, Arlene Valeiras Pérez y Marisel Valeiras Pérez (en adelante, interventoras), integrantes de la sucesión, presentaron en calidad de interventoras una "Comparecencia Especial en Apoyo de la Aprobación del Cuaderno Particional". En su escrito aseguraron haber examinado el "Cuaderno Particional" y estar de acuerdo con su contenido.

Luego de varios incidentes procesales, el TPI emitió una "Sentencia" el 20 de noviembre de 2024. Por entender que el peticionario cumplió con todos los requisitos esbozados en el Código de Enjuiciamiento Civil, *infra,* el foro primario adoptó el cuaderno particional. Al culminar su dictamen, el TPI ordenó que se procediera con la partición y liquidación del caudal.

Superados varios trámites procesales impertinentes a la controversia ante nuestra consideración, el 14 de marzo de 2014, el peticionario dirigió una misiva a UBS Financial Services, Inc. (en lo sucesivo, UBS) notificándole sobre la "Sentencia" y en lo pertinente, solicitando el desembolso de $386,733.71 a su nombre, en concepto de honorarios correspondiente al 15% del caudal.

En respuesta, las interventoras destituyeron al peticionario como contador partidor mediante correo electrónico cursado a su representación legal el 3 de abril de 2025. Se le indicó en la referida comunicación que la cantidad que pretendía cobrar,

---

[1] Según el "Cuaderno Particional", el valor neto del caudal es de $2,467,687.75, estando la mayoría de su contenido en una cuenta de inversiones en UBS Financial Services, Inc.

además de exorbitante, no estaba contemplada en el cuaderno particional ni fue aprobada por el TPI.

El 27 de marzo de 2024, el peticionario presentó una "Solicitud de Honorarios del Contador Partidor". Alegó que, a pesar de ser nombrado contador partidor por el Sr. Pérez Beltrán, el causante no fijó sus honorarios, por lo que peticionó al foro primario que indicara el por ciento del caudal hereditario que le correspondía como remuneración de sus labores.

En respuesta, el 7 de abril de 2025, las interventoras presentaron su "Oposición a Solicitud de Honorarios". Precisaron que el peticionario estaba vedado de solicitar los honorarios, ya que la solicitud se presentó más de tres meses después de que la "Sentencia" adviniese final y firme, haciendo cualquier acción posterior por el tribunal una sin jurisdicción. Añadieron que, los honorarios no fueron fijados por el causante en su testamento, tampoco fueron presupuestados en el cuaderno particional, ni consentidos por los herederos.

El TPI emitió el 4 de abril de 2025, pero notificó el 7 de abril de 2025, una "Resolución" en la cual declaró con lugar la "Solicitud de Honorarios del Contador Partidor" y estableció los honorarios a razón de 10% del caudal hereditario, a ser distribuido entre las partes.

El mismo 7 de abril de 2025, las interventoras presentaron una "Moción de Reconsideración" fundamentando su petitorio en los argumentos levantados en su "Oposición a Solicitud de Honorarios".

El peticionario presentó el 7 de abril de 2025 su "Oposición a Reconsideración". Argumentó que, la destitución fue infundada, dado que lo único que pretendían las interventoras era evitar cumplir con la remuneración, y además tardía, pues el nombramiento debe ser impugnado al momento de la designación.

Las interventoras presentaron su "Replica a Oposición a Moción de Reconsideración" el 21 de abril de 2025. En esencia, arguyeron que el TPI carece de jurisdicción para atender la petición de honorarios, ya que esta se presentó después que la sentencia adviniera final y firme, por lo que actuar contrario a ese principio procesal constituiría una modificación impermisible de la sentencia.

El 23 de abril de 2025, el TPI emitió una "Orden" mediante la cual declaró con lugar la "Moción de Reconsideración" y en consecuencia dejó sin efecto la "Resolución" emitida el 4 de abril de 2025.

Insatisfecho con la determinación del foro primario, el peticionario recurre ante este foro apelativo intermedio y levanta el siguiente señalamiento de error:

> *Primer Error: Erró el TPI, Sala Superior de Humacao al dejar sin efecto al* [sic] *Resolución del 4 de abril de 2025, donde se adjudicaba la remuneración del Contador Partidor- gasto que se deduce de la herencia – por no haberse solicitado previo a que la Sentencia adviniera final y firme más sin haber culminado sus funciones de contador partidor lo cual sería contrario a las disposiciones del Código Civil.*

Luego, el señor Hiram Pérez Soto, hijo del causante, presentó ante esta Curia una "Moción de Desestimación" el 2 de junio de 2025. Empero, nos vimos obligados a desglosar dicha moción dado que el señor Hiram Pérez Soto compareció por derecho propio, acto que le fue prohibido por el Tribunal Supremo de Puerto Rico cuando lo suspendió indefinidamente de la práctica de la abogacía. *In re Pérez Soto,* 200 DPR 189, 215 (2018).[2]

El 6 de junio de 2025, emitimos una "Resolución" donde señalamos que las interventoras tenían hasta el 2 de junio de 2025

---

[2] El alto foro dictaminó que "[*e*]*l señor Pérez Soto deberá comparecer ante los tribunales mediante representación legal para defender sus intereses en los pleitos relacionados a la herencia de su padre".* Véase, además, la "Resolución" emitida el 30 de abril de 2025, identificada con el alfanumérico KLCE202500273, dictada por el presente panel de este Tribunal de Apelaciones, mediante la cual desestimamos un recurso presentado por el señor Hiram Pérez Soto por el mismo fundamento.

para presentar su escrito en oposición, lo cual no habían hecho. A pesar de ello, le otorgamos un término adicional y perentorio para la presentación de su escrito a vencer el 12 de junio de 2025.

Ese mismo 6 de junio de 2025, las interventoras presentaron una "Moción de Desestimación", a la cual se opuso el peticionario el 9 de junio de 2025. Dispusimos de ambas mociones mediante "Resolución" emitida el 10 de junio de 2025, en la cual declaramos No Ha Lugar la "Moción de Desestimación".

En cumplimiento de orden, las interventoras comparecieron ante esta Curia el 12 de junio de 2025 mediante "Memorando en Oposición a la Expedición del Auto de *Certiorari*". Con el beneficio de ambas comparecencias, procedemos a resolver.

**II.**

**A.**

El recurso de *Certiorari* es el mecanismo procesal utilizado para revisar aquellas resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone que, como norma general, dicho recurso solo será expedido por este Tribunal de Apelaciones en dos instancias, a saber: (1) cuando se recurra de una resolución u orden bajo las Reglas 56 y 57; o (2) cuando se recurra de la denegatoria de una moción de carácter dispositivo.

No obstante lo anterior, y a modo de excepción, este foro apelativo intermedio podrá revisar órdenes o resoluciones interlocutorias dictadas por el foro primario cuando se recurra de lo siguiente: (1) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia; y (5) en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

Por su parte, nuestro Alto Foro ha expresado que, el auto de *Certiorari* constituye un vehículo procesal discrecional que permite a un Tribunal de mayor jerarquía revisar las determinaciones de un Tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Si bien el auto de *Certiorari* es un vehículo procesal extraordinario de carácter discrecional, al atender el recurso no debemos "hacer abstracción del resto del Derecho". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 711 (2019).

Así, a los fines de ejercer sabiamente nuestra facultad discrecional en la consideración de los asuntos planteados mediante dicho recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, imparte que esta segunda instancia judicial tomará en consideración los siguientes criterios al determinar si procede o no la expedición de un auto de *Certiorari*:

> *(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
>
> *(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*
>
> *(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
>
> *(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
>
> *(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
>
> *(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
>
> *(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

**B.**

Nuestro ya derogado Código Civil del 1930[3] disponía que ningún heredero puede ser obligado a permanecer en la indivisión de la herencia. 31 LPRA sec. 2857. Siendo ello así, todo heredero que posee libre administración y disposición de sus bienes puede, de ser aplicable el pasado código, solicitar en cualquier tiempo la partición de la herencia. 31 LPRA sec. 2872. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 176 (2005).

Nos ilustran los tratadistas Díez Picazo y Gullón que "la partición de la herencia es el acto o negocio jurídico que extingue el estado de indivisión y comunidad, atribuyendo bienes y derechos singulares a los coherederos". L. Díez Picazo y A. Gullón, Instituciones de Derecho Civil, Tomo II, Vol. 3, Editorial Tecnos, Madrid, 1995, pág. 788.

A pesar de que el Código Civil no estatuyó un requisito de forma para llevar a cabo la partición de la herencia, el Art. 601 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2622, menciona sucintamente las cuatro etapas generales que lo componen, a saber, 1) el inventario y avalúo, 2) la liquidación, 3) la división, y 4) la adjudicación. Véase, también, E. González Tejera, Derecho de Sucesiones, Tomo I, Ed. UPR, págs. 481-498.

De modo sintetizado, las operaciones de las precitadas etapas ocurren de la siguiente manera:

> *Inventario de todos los bienes, derechos, obligaciones, posesiones, cargas, expectativas, etc. que componen la masa hereditaria*
>
> *Avalúo, o valoración del activo y del pasivo inventario para llegar al saldo.*
>
> *Liquidación propiamente dicha, con la finalidad de pagar las deudas y valorar las cargas, determinando y especificando cuantitativamente el saldo partible.*

---

[3] Es de aplicación las disposiciones del Código Civil de 1930 dado que el causante falleció el 7 de octubre de 2006, véase Artículo 1816 del Código Civil de 2020. 31 LPRA sec. 11721.

*División de los bienes y derechos partibles, formando los correspondientes lotes.*

*Adjudicación propiamente dicha de esos lotes que se han formado en pago de las cuotas de los coherederos.*

J. Cuevas Segarra, A. Román García, Derecho Sucesorio Comparado, Publicaciones JTS, 2003, págs. 421-422. Véase, también, *Matos Rivera v. Soler Ortiz,* 213 DPR 1044, 1060 (2024).

El Código de Enjuiciamiento Civil, a su vez, dispone que la partición será función de un contador partidor, quien será nombrado por disposición testamentaria o acto judicial. 32 LPRA sec. 2621. Recientemente, nuestro Tribunal Supremo se expresó sobre las funciones de un contador partidor en *Tous Rodríguez v. Sucn. Tous Oliver et al,* 212 DPR 686, 701-703 (2023). En esa ocasión, la Alta Curia nos remitió al Art. 603 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2624,[4] el cual indica que el contador partidor:

> [F]*ijará día, hora y lugar para la división notificando al efecto a las partes interesadas. A la hora y en el lugar designados, y asistido por las partes, tendrá facultad para examinar testigos y peritos. Presentará una relación de los bienes partibles, con el avalúo de todos los comprendidos en ella, y en su informe, que deberá suscribir, indicará la manera equitativa y justa en que puede distribuirse el caudal entre los que tengan derecho a la sucesión, y si opinare que no es posible llevar a cabo tal división sin que medie una venta, hará constar esta circunstancia en su informe, y propondrá una venta judicial y la repartición del producto.*

Sobre dicho informe detalla que, una vez sometido al tribunal, el contador partidor notificará a las "partes con ocho (8) días de anticipación. Si dentro de los ocho (8) días de notificada la presentación del informe éste no fuere impugnado, el juez del Tribunal de Primera Instancia lo confirmará y ordenará que se proceda a la partición, división o distribución, de acuerdo con dicho informe". *Íd.*

---

[4] El artículo utiliza el término de comisario indistintamente al referirse al contador partidor. *Tous Rodríguez v. Sucn. Tous Oliver et al, supra,* en la pág. 702.

En cuanto a los gastos de partición, el Art. 1017 del Código Civil estableció que los gastos "hechos en interés común de todos los coherederos se deducirán de la herencia; [mientras que] los hechos en interés particular de uno de ellos, serán a cargo del mismo". 31 LPRA sec. 2883. Sobre este particular nos comenta el Profesor González Tejera, explicando, que "son del cargo del caudal los honorarios y los gatos del contador partidor". E. González Tejera, Derecho de Sucesiones, *supra,* en la pág. 490.

A idéntica conclusión arribó nuestro Tribunal Supremo en *Viuda de Giol v. Giol García*, 98 DPR 227, 233 (1969), cuando dictaminó que "los honorarios por servicios como Contador Partidor, así como las costas ocasionadas en los procedimientos de su función como tal deben deducirse de la herencia como lo prescribe el Art. 1017 del Código Civil".

Según expusimos en los párrafos anteriores, un contador partidor puede ser nombrado por los miembros de la sucesión, por el foro judicial o por disposición testamentaria. Cuando se trata de esta última, comenta el tratadista Cuevas Segarra que, "la partición realizada tendrá un valor y una eficacia jurídica equivalente a la efectuada por [el testador], no necesitando la aprobación ulterior de los interesados en la sucesión como requisito de validez en nuestro ordenamiento jurídico." J. Cuevas Segarra, A. Román García, Derecho Sucesorio Comparado, *supra*, pág. 408.

Finalmente, nos señala el Profesor González Tejera que, en la última etapa de adjudicación y pago, "el contador-partidor deberá observar las normas contenidas en el Código Civil, cuya inobservancia puede dar lugar al remedio de revisión judicial y, en casos extremos … a la rescisión de la partición". E. González Tejera, Derecho de Sucesiones, *supra,* en la pág. 499.

**III.**

De entrada, debemos mencionar que, de conformidad con los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* este foro apelativo intermedio se encuentra en posición de expedir el *auto* solicitado. Ante la discreción que poseemos para atender el asunto, procedemos a resolver la presente controversia.

Arguye el peticionario que la retribución del contador partidor es un gasto de la partición y, por tanto, una carga de la herencia que debe ser satisfecha por todos los herederos. Por tal razón, y en ausencia de una provisión testamentaria, entiende que le corresponde al TPI establecer la cuantía. Con respecto al argumento jurisdiccional, el peticionario esgrime que la solicitud de honorarios no es tardía, ya que sus labores como contador partidor no cesaron con la presentación del "Cuaderno Particional" debido a que no se ha culminado la partición.

En cambio, en su escrito en oposición las interventoras reiteraron los argumentos esbozados en su moción de desestimación, la cual declaramos sin lugar. Añaden, además, que los argumentos presentados por el peticionario en el recurso fueron levantados por primera vez ante este foro, en contravención a lo resuelto por nuestro Tribunal Supremo, sin embargo, dicha postura no fue adecuadamente fundamentada. Finalmente, puntualizaron que el peticionario no presentó evidencia sobre el trabajo que prestó como contador partidor que le hiciera acreedor de la suma que solicita.

Según expusimos en el acápite anterior, es incuestionable que nuestro ordenamiento jurídico reconoce los honorarios del contador partidor como gastos de la herencia. Ahora bien, nos enfrentamos a un contador partidor nombrado mediante disposición testamentaria, cuya remuneración no fue establecida

en el referido testamento. Ante dicho escenario, y en ausencia de acuerdo entre los miembros de la sucesión, le corresponde al tribunal establecer la cuantía de la retribución. Ante ello, surge la interrogante de cuándo debe ocurrir el pago, puesto que la Asamblea Legislativa ni el Tribunal Supremo se han expresado sobre el momento preciso en el cual se deben solicitar los honorarios. Para obtener nuestra contestación debemos examinar nuevamente las etapas de la partición y en cuál de ellas se encuentra el presente pleito. Veamos.

Recordemos que la partición comienza con el inventario y avalúo, y culmina con la adjudicación, y de acuerdo con el derecho señalado, la labor del contador partidor se da por terminada una vez se adjudican las cuotas de los herederos.

En cuanto a los hechos particulares del caso, es evidente que la adopción del "Cuaderno Particional" no puso fin a la partición. Así lo reconoció el TPI cuando adoptó el "Cuaderno Particional" y luego ordenó que se procediera con la liquidación del caudal. Resulta evidente que, la aprobación del cuaderno no puede dar por terminada la partición, ya que una cosa es establecer en papel los activos, deudas y reparticiones de cuotas, y otra cosa es ejecutar lo contenido en el cuaderno. Fue precisamente el intento de comenzar con la adjudicación de las cuotas, entiéndase la carta enviada por el peticionario a UBS, lo que dio comienzo a la presente controversia.

No negamos que hubiera sido menos contencioso incluir los honorarios del contador partidor en el "Cuaderno Particional", no obstante, es la propia laguna jurídica —sobre una forma y etapa específica para solicitar los honorarios— que nos permite concluir que la solicitud de honorarios presentada por el peticionario no fue tardía. Resolver lo contrario incidiría en la correcta solución del litigio, y es que, si este foro razona que una solicitud de honorarios

de contador partidor que fue presentada previo a la culminación de la partición es tardía, estuviese inobservando la norma contenida en el Art. 1017 del Código Civil, *supra,* inobservancia que a su vez quebrantaría el principio cardinal de proveer una solución justa, rápida y económica que gobierna nuestro ordenamiento jurídico.

En atención al argumento de las interventoras sobre la falta de evidencia del trabajo que realizó el peticionario como contador partidor, hacemos hincapié en que las interventoras aprobaron el cuaderno particional mediante moción presentada el 25 de agosto de 2023, donde aseguraron haber examinado el cuaderno y estar de acuerdo con su contenido. Cuaderno que fue indisputablemente fruto de la labor que realizó el Sr. José Cordero Soto como contador partidor.

## IV.

Por los fundamentos antes expuestos, los que hacemos formar parte del presente dictamen, expedimos el auto de *Certiorari* solicitado y revocamos la "Orden" recurrida, emitida el 23 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de Humacao. En consecuencia, queda en pleno vigor la "Resolución" emitida el 4 de abril de 2025, notificada el 7 de abril de 2025, en la cual se establece el cobro de honorarios a razón de 10% del caudal hereditario.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones