ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MUNICIPIO DE CULEBRA<br><br>Apelado<br><br>v.<br><br>SUCN. CARMEN RESTO GARCÍA, COMPUESTA POR ALFREDO ROBERTO MARTÍNEZ AMADOR Y OTROS<br><br>Apelantes | KLAN202401111 | *Apelación* procedente del Tribunal de Primera Instancia Sala de Fajardo<br><br>Caso Núm. NSCI201800118 (307)<br><br>Sobre: Sentencia Declaratoria |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 25 de noviembre de 2025.

Comparecieron la Sra. Ayleen Martínez Ramos, el Sr. Estefan Alejandro Martínez López, el Sr. Sebastián Andrés Martínez López y la Sra. Claudia Sofía Martínez López (en adelante y en conjunto, "Sucesión Resto García" o "apelantes") mediante el recurso de apelación presentado el 11 de diciembre de 2024. Nos solicitaron la revocación de una determinación emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (en adelante, "foro primario"), en la cual concedió al Municipio de Culebra la *Demanda* sobre desahucio y denegó a la Sucesión Resto García la defensa de usucapión extraordinaria.

Por los fundamentos que expondremos a continuación, se **confirma** la *Sentencia* apelada.

**-I-**

El 9 de marzo de 2018, el Municipio de Culebra (en adelante, "Municipio" o "apelado") presentó una *Demanda* contra la Sucesión Resto

---

[1] Mediante la Orden Administrativa OATA-2025-013, emitida el 6 de febrero de 2025, se designó al Juez Isaías Sánchez Báez en sustitución de la Jueza Camille Rivera Pérez.

Número Identificador

SEN2025_____

García.[2] En esta, arguyó que en abril de 2016, la Sra. Marilyn López Rodríguez (en adelante, "señora López") le solicitó un certificado de título por haberse consumado una usucapión extraordinaria a favor de sus hijos desde la adquisición mediante documento privado de la propiedad por la abuela de sus hijos, la Sra. Carmen Resto García (en adelante, "señora Resto"), el 10 de junio de 1985. Luego de esto, el Municipio le informó a la señora López que no tenía derecho a la certificación solicitada y le ordenó a cesar y a desistir de llevar a cabo actos de dominio sobre la propiedad. El Municipio argumentó que adquirió el terreno el 29 de abril de 1988 perteneciente a la Marina de los Estados Unidos y que el término de treinta (30) años no había transcurrido si se contabilizaba desde la fecha de transacción mencionada. Alegó también que la compraventa realizada por la señora Resto solo concernía la estructura enclavada en el terreno, lo cual se especificó en el documento y que, por ende, esto interrumpió el término para usucapir al ser un reconocimiento expreso. Le solicitó al foro primario que declarara su titularidad sobre el predio y que ordenara el desahucio y lanzamiento de la Sucesión Resto García sin derecho a resarcimiento, por estos ser considerados, según el ente público, como edificantes de mala fe.

Por su parte, la Sucesión Resto García, el 17 de abril de 2019, presentó su *Contestación a la Demanda y Reconvención*.[3] Admitió que sí le solicitó al Municipio el título sobre la propiedad, pero negó las demás alegaciones. Además, arguyó que ha poseído el lote en calidad de dueño, pública, pacífica e ininterrumpidamente por más de treinta (30) años. Asimismo, especificó que, para la fecha de compra de la estructura por la señora Resto, el gobierno federal no era su titular, por lo cual se debía contabilizar el término para usucapir desde el 10 de junio de 1985 y no desde el 29 de abril de 1988 como sostuvo el Municipio. Por último, entabló una reconvención por daños y perjuicios.

---

[2] Apéndice de los apelantes, anejo I, págs. 1-31.
[3] *Id.*, anejo II, págs. 32-50.

Luego de varios trámites procesales que resultan innecesarios pormenorizar, el foro primario celebró el juicio en su fondo los días 28 y 29 de agosto de 2023. Allí ambas partes presentaron evidencia documental y testifical. Por un lado, el Municipio presentó el testimonio del Sr. Orlando Bermúdez Rodríguez. De otro lado, la Sucesión Resto García presentó cinco (5) testimonios, a saber: (i) la señora Rodríguez; (ii) Sr. Estefan Alejandro Martínez López; (iii) el Sr. Sebastián Andrés Martínez López; (iv) la Sra. Claudia Sofía Martínez López; y (v) el Sr. Guadalupe Márquez. Además, ambas partes estipularon treinta y cinco (35) documentos como prueba documental.

En cumplimiento de orden, el 18 de septiembre de 2023, la Sucesión Resto García presentó *Memorando en apoyo de Desestimación.*[4] En síntesis, alegó que el tiempo que el Gobierno de Estados Unidos fue titular de la propiedad no interrumpió la posesión ni afectó sus derechos, debido a que el *Quitclaim Deed* lo que prohíbe es ejercer la acción reivindicatoria contra los Estados Unidos. Por lo cual, sostuvieron que la usucapión extraordinaria se consumó el 10 de junio de 2015 y, por tanto, la demanda de epígrafe era tardía e inoficiosa.

En oposición, el 10 de octubre de 2023, el Municipio presentó *Escrito de conclusiones y posición de la parte demandante reconvenida.*[5] Conforme a la prueba documental estipulada, alegó que se podían establecer veintidós (22) hechos incontrovertidos, los cuales redactó y sometió para análisis del Tribunal. Además, arguyó que la prueba desfilada demostró que la propiedad estaba abandonada al punto que fue arropada por la maleza. Agregó que, la Sucesión Resto García no presentó evidencia sobre las alegadas visitas anuales ni testimonio de vecinos colindantes que corroboraran sus alegaciones ni facturas sobre la conexión a la electricidad y agua de la propiedad.

---

[4] *Id.,* anejo XVIII, págs. 366-401.
[5] *Id.*, anejo XIX, págs. 402-416.

Así las cosas, el foro primario dictó y notificó una *Sentencia* el 14 de mayo de 2024.[6] En esta, el foro primario hizo constar catorce (14) determinaciones de hechos, a saber:

1. En fecha 2 de diciembre de 1983 el Gobierno de Puerto Rico adquirió del Gobierno de los Estados Unidos la titularidad de la parcela 763 de Culebra, Puerto Rico.

2. Posteriormente, en fecha 20 de febrero de 1987 el Estado Libre Asociado de Puerto Rico revierte la titularidad de la finca 763 a favor de los Estados Unidos de Norteamérica.

3. En fecha 29 de abril de 1988, la parte demandante, Municipio de Culebra, adquirió del Gobierno de los Estados Unidos la finca 763, mediante escritura de cesión y traspaso y por la cantidad de $640,000.00, quien desde entonces ha sido su dueño.

4. El 1ero de octubre de 2009, la finca 763 fue segregada por el Municipio con la finalidad de formar varias comunidades y proyectos sociales; creando así la finca 1,106 de Culebra, en la que se desarrolló la Comunidad Villa Muñeco, donde ubica la parcela objeto de esta acción y que se describe a continuación:

   [...]

5. La antes descrita parcela 99 previamente era conocida como la parcela 18 del barrio Resaca.

6. La Sra. Carmen Resto García, adquirió en fecha 10 de junio de 1985, y mediante compraventa, por la cantidad de $13.500.00, una edificación de madera ubicada en la parcela 18 del barrio Resaca, hoy Parcela 99 de la Comunidad Villa Muñeco. Entrando a ocuparla el 30 de junio de 1985.

7. Mediante la referida transacción de compraventa, la parte compradora estuvo consciente de que el terreno donde se encuentra enclavada la edificación adquirida, era propiedad de la Marina de los Estados Unidos o del Municipio de Culebra.

8. Al momento de la Sra. Carmen Resto García adquirir la edificación de madera, el terreno era propiedad del Gobierno de Puerto Rico, pasando a pertenecer, el 20 de febrero de 1987, a los Estados Unidos de Norteamérica y posteriormente al Municipio de Culebra, quien lo adquirió el 29 de abril de 1988.

9. En fecha 21 de abril de 2016, la Sra. Carmen Resto, por medio de la Sra. Marilyn López Rodríguez, compareció ante el Municipio de Culebra, solicitándole expidieran a su favor, título de propiedad de la parcela 99 de Villa Muñeco. La referida solicitud le fue denegada por el Municipio e Culebra, mediante carta de fecha 21 de junio de 2016, en la que expuso que la propiedad llevaba muchos años abandonada y no contaba con servicios básicos de agua ni electricidad. Mediante la referida carta, el Municipio de Culebra le ordenó a la Sra. Carmen Resto a cesar y desistir de cualquier acto de dominio y administración sobre el solar en cuestión.

10. Al encontrarse la propiedad sin los servicios de electricidad y agua instalados, la Sra. Carmen Resto, encargó a la Sra. Marilyn López García, mediante Declaración Jurada de fecha 8 de junio

---

[6] *Id.*, anejo XX, págs. 417-429.

de 2016 el solicitar la instalación de los referidos servicios y a identificar las cuentas correspondientes a estos y pagar fianza.

11. En fecha 22 de enero de 2016 la Sra. Carmen Resto otorgó Testamento Abierto ante el Notario Aida Iris Rodríguez Figueroa, mediante el cual instituyó como sus únicos herederos universales a sus nietos, los codemandados Ayleen Martínez Ramos, Alfredo Martínez Amador, Estefan Alejandro Martínez López, Sebastián Andrés Martínez López y Claudia Sofia Martínez López. Ello debido a que su único hijo, el señor Alfredo Roberto Martínez Resto falleció el 17 de enero de 2016. Mediante el referido Testamento, la Sra. Carmen Resto declaró que era dueña de una edificación de madera localizada en el Barrio Resaca #18 de Culebra y mediante la cual reconoció que el terreno era propiedad del Municipio de Culebra.

12. En múltiples ocasiones, la Sra. Carmen Resto, solicitó al Municipio de culebra el que le concediera título de propiedad del inmueble objeto de esta causa.

13. El inmueble estuvo abandonado por varios años, sin acceso, sin parte de su techo y sin contar con los servicios básicos de agua y electricidad-

14. Durante los años 2016 y 2017, y tras el fallecimiento de doña Carmen Resto, la Sra. Marilyn López, madre de los codemandados Estefan Alejandro Martínez López, Sebastián Andrés Martínez López y Claudia Sofia Martínez López, continuó solicitando al Municipio de Culebra el que se le otorgara título de propiedad, indicando que ya se estaba haciendo cargo de limpiar y restablecer la propiedad, y exponiendo que la razón por la que no habían ido a Culebra por varios años se debía a la enfermedad de su esposo y a que doña Carmen [Resto], dado a su edad avanzada, no le interesaba ir a Culebra.[7]

Considerando lo anterior, el foro primario le ordenó a la Sucesión Resto García a desalojar la propiedad debido a que no se configuró una usucapión extraordinaria. Fundamentó su dictamen en el hecho de que el Municipio advino titular de la propiedad en 1988 y que, según las disposiciones contenidas en la ley federal y el tracto jurisprudencial local, los términos de la prescripción adquisitiva no transcurren contra Estados Unidos. Además, recalcó que la propiedad, según los dichos de la señora López en una carta al Municipio fechada al 1 de octubre de 2016, estuvo abandonada por varios años y que no contaba durante ese tiempo, con servicios de agua o electricidad. Asimismo, señaló que la señora Resto hizo un reconocimiento expreso sobre que la parcela era propiedad del Municipio en su Testamento Abierto. Por último, le ordenó al Municipio a

---

[7] *Id.,* págs. 419-421.

que tasara la estructura y les entregara un cheque a la Sucesión Resto García por su correspondiente valor.

Inconforme, el 29 de mayo de 2024, la Sucesión Resto García presentó una *Moción de Reconsideración [y] Determinaci[ones] de Hechos Adicionales.*[8] En esta, reiteró su postura sobre el hecho de que la usucapión extraordinaria fue consumada porque el término debía contarse desde que la señora Resto entró en posesión de la estructura en 1985. Asimismo, puntualizó que la propiedad ni fue abandonada ni los servicios de agua y luz fueron cortados.

Luego de ciertas tramitaciones, el foro primario pronunció una determinación el 7 de noviembre de 2024, notificada el 14 de noviembre de 2024.[9] En ese dictamen, el foro primario expresó lo siguiente:

> Tras un análisis de los planteamientos presentados por la demandada en su escrito, s[o]lo podemos concluir que la solicitud de reconsideración presentada por esta, aunque oportuna, no cumple con los requisitos que impone la ley; por lo que, este tribunal se encuentra obligado a declarar *No Ha Lugar* [a] la solicitud de reconsideración presentada por la parte demandada, los sucesores de Carmen Resto.[10]

Insatisfechos aún, el 11 de diciembre de 2024, la Sucesión Resto García acudió ante este Tribunal mediante el recurso de epígrafe y apuntó los errores siguientes:

> Erró el TPI al ignorar y pasar por alto que, a la fecha en que se presentó la demanda, la usucapión extraordinaria era un hecho consumado por lo que la misma era tardía e inoficiosa, sin efecto jurídico.
>
> En la alternativa, erró el TPI en su apreciación de la prueba, descartando, inclusive, prueba testifical y documental que demostraba la posesión continua de los [apelantes] por más de treinta años, esto es, la usucapión extraordinaria ya consumada.
>
> Erró el TPI al determinar que la solicitud de reconsideración de los apelantes no cumplió con la Regla 47 de Procedimiento Civil y que las determinaciones de hechos adicionales solicitadas son insustanciales e innecesarias.

Las partes presentaron la transcripción de prueba oral estipulada, así como sus respectivos alegatos suplementarios.

---

[8] *Id.*, anejo XXI, págs. 430-445.
[9] *Id.*, anejo XXVI, págs. 483-487.
[10] *Id.*, pág. 486. (Énfasis suplido). Tal pronunciamiento fue expuesto luego de esbozar el derecho aplicable sobre la Regla 47 de las de Procedimiento Civil, *infra*, que versa sobre el requisito de particularidad y especificidad en las mociones de reconsideración.

Así pues, con el beneficio de la comparecencia escrita de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

**A. Reconsideración y determinaciones de hechos adicionales**

La Regla 47 de Procedimiento Civil permite que aquella parte adversamente afectada por una sentencia dictada por el foro primario podrá, dentro del término jurisdiccional de quince (15) días contados desde el archivo en autos de la copia de la notificación, presentar una moción de reconsideración. 32 LPRA Ap. V, R 47. Esta solicitud debe exponer con suficiente particularidad y especificidad los hechos y el derecho que el promovente cree deben ser reconsiderados por el foro y debe fundarse en cuestiones sustanciales relacionadas con las determinaciones o conclusiones de derecho. *Marrero Rodríguez v. Colón Burgos*, 201 DPR 330, 337-338 (2018). La presentación oportuna del petitorio tiene el efecto de interrumpir los términos de recurrir en alzada para todas las partes luego de que estas últimas hayan sido debidamente notificadas sobre la solicitud en cuestión dentro del término de estricto cumplimiento de quince (15) días. 32 LPRA Ap. V R. 47. Ahora bien, los términos para recurrir en alzada comenzarán a correr nuevamente desde la fecha de archivo en autos de la copia de la notificación de la resolución que resuelva la referida solicitud de reconsideración. *Id.* No obstante, cuando la solicitud de reconsideración es presentada en contravención con los requisitos de las Reglas de Procedimiento Civil, la parte afectada solo contará con lo que reste del término jurisdiccional para presentar su apelación. *Id.* Esto es, de no cumplirse con las especificidades exigidas, la moción se rechazará y se entenderá que nunca interrumpió el término para recurrir en alzada de la orden, resolución o sentencia.

De otra parte, la Regla 43.1 de Procedimiento Civil permite a una parte solicitar determinaciones de hechos adicionales a la sentencia dentro de quince (15) días después de su archivo en autos de la copia la

notificación. 32 LPRA Ap. V, R. 43.1. Igual a la moción de reconsideración, la solicitud bajo la Regla 43 debe "exponer con suficiente particularidad y especificidad los hechos que el promovente estime probados, y debe fundamentarse en cuestiones sustanciales relacionadas con determinaciones de hecho pertinentes o conclusiones de derecho materiales". 32 LPRA Ap. V, R. 43.2. Ante el cumplimiento de los requisitos expuestos, los términos para presentar un recurso de apelación comienzan a transcurrir nuevamente una vez se archiva en autos copia de la notificación de la resolución referente a las determinaciones de hechos y conclusiones de derecho solicitadas. *Id.*

Por último, la Regla 43.1 de Procedimiento Civil, *supra,* establece que, si la parte adversamente afectada le interesa solicitar determinaciones de hechos adicionales o iniciales, así como una reconsideración, deberá hacerlo en un solo escrito y el tribunal deberá resolverlo de igual manera.

**B. Usucapión**

Conforme al Artículo 280 del derogado Código Civil de Puerto Rico de 1930 (en adelante, "Código Civil de 1930"), la propiedad es el derecho real por el cual una cosa pertenece a una persona con exclusión de cualquier otra junto a la facultad de gozar y disponer de la misma sin más limitaciones que las impuestas por ley. 31 LPRA sec. 1111.[11] Asimismo, reconoce que el derecho de propiedad y los demás derechos reales, se adquieren, de entre otras formas, mediante la *prescripción adquisitiva* o *usucapión.* Artículos 549 y 1830 del Código Civil de 1930; 31 LPRA secs. 1931 y 5241. Según el Profesor Vélez Torres, la adquisición de la propiedad por medio de la usucapión es una consecuencia de la posesión mantenida durante un término fijado por ley, unido al cumplimiento de determinados criterios. J.R. Vélez Torres, *Curso de Derecho Civil: los bienes, los derechos reales,* España, Offirgraf, S.A., T. II, 2002, pág. 263. Esto es, el adquirente

---

[11] A pesar de que, el 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico de 2020, los hechos del caso de epígrafe se desarrollaron previo a la fecha de vigencia del citado estatuto. Por lo cual, evaluaremos las controversias de acuerdo con el derecho establecido en el derogado Código Civil de 1930.

deriva su derecho por el sólo hecho de poseer en concepto de dueño, durante determinado período de tiempo impuesto por ley, de manera pública, pacífica y no interrumpida. *Id.*; Artículo 1841 del Código Civil de 1930; 31 LPRA sec. 5262.

Nuestro ordenamiento jurídico reconoce dos modalidades de la prescripcion adquisitiva, a saber: (i) la *ordinaria* y (ii) la *extraordinaria. Id.*, pág. 265. Por un lado, la *usucapión ordinaria* requiere poseer de buena fe y con justo título. *Id.;* Artículo 1840 del Código Civil de 1930; 31 LPRA sec. 5261. Entendiéndose que el concepto de "buena fe" es aquella creencia del poseedor de que la persona de quien recibió la cosa era dueña de ella y que podía transmitir su dominio. Artículo 1850 del Código Civil de 1930; 31 LPRA sec. 5271. Mientras que el concepto de "justo título" debe entenderse como aquel legalmente suficiente para transferir el dominio o derecho real cuya prescripcion se trate. Artículo 1852 del Código Civil de 1930; 31 LPRA sec. 5273.

De otra parte, la *usucapión extraordinaria* no requiere ni el elemento de buena fe ni justo título. Artículo 1859 del Código Civil de 1930; 31 LPRA sec. 5280. Razón por la cual, se exige una posesión prolongada de treinta (30) años para que el poseedor finalmente pueda adquirir la propiedad del inmueble. *Id.* No obstante, en dicho contexto, se requiere poseer en concepto de dueño, ya que es lo único que sirve a manera de título para adquirir el dominio. Artículo 376 del Código Civil de 1930; 31 LPRA sec. 1462; Adm. Terrenos v. SLG Rivera-Morales, 187 DPR 15, 29 (2012); *Bravman, González v. Consejo de Titulares,* 183 DPR 827, 839 (2011). Ello basado en que el término "posesión en concepto de dueño" es aquella opinión pública o percepción general que identifica al poseedor como el titular del bien, debido a los actos que ejecuta con relación a la propiedad, independientemente de la creencia que este pueda tener sobre el bien en cuestión *Id.* En síntesis, nuestro Alto Foro explicó que la prescripción extraordinaria se produce sólo si se demuestra lo siguiente:

(1) una posesión continuada durante treinta años sobre el inmueble; (2) por haberla así tolerado el dueño del inmueble; (3) ya que el prescribiente ha entrado en posesión del inmueble sin autorización, permiso o licencia otorgados por el dueño o en virtud de contrato celebrado con el dueño; (4) cuya posesión ha mantenido el poseedor en concepto público de dueño, de acuerdo a la creencia colectiva de la comunidad en que vive, no en virtud de la creencia propia que pueda tener el poseedor de ser el dueño del inmueble poseído y pacífica; y (5) cuya posesión resulte además pública, pacífica y (6) sin que se haya interrumpido naturalmente, o sea, por abandono de la cosa por el poseedor por más de un año, o civilmente, en virtud de diligencia judicial o notarial, o por un reconocimiento expreso o tácito del derecho del dueño hecho por el poseedor, antes de haber transcurrido los treinta años durante los cuales se consuma la prescripción, y (7) sin que el poseedor haya renunciado expresa o tácitamente a su título por prescripción por alguna causa que resulte eficaz en derecho para tal renuncia, después de consumada la prescripción extraordinaria.

*Adm. Terrenos v. SLG Rivera-Morales,* supra, págs. 28-29 citando a *Dávila v. Córdova,* 77 DPR 136, 150-151 (1954).

Asimismo, nuestra jurisprudencia ha reconocido que es la posesión civil la que da lugar a la prescripción adquisitiva, ya sea ordinaria o extraordinaria. *Adm. Terrenos v. SLG Rivera-Morales,* supra, pág. 29. Partiendo de la premisa que, la "posesión civil" es la tenencia de una cosa o el disfrute de un derecho, unidos a la intención de hacer suya la cosa o el derecho. Artículo 360 del Código Civil de 1930; 31 LPRA sec. 1421. Por lo cual, ni la mera tolerancia del verdadero titular, ni aquellos actos que el poseedor lleva a cabo por razón de su anuencia, son suficientes para adquirir el dominio por virtud de la prescripción adquisitiva, ya que falta el requisito de la posesión en concepto de dueño. *Id.; Bravman, González v. Consejo de Titulares,* supra, pág. 839. Esto es, "[l]a persona que posee por mera tolerancia no podrá usucapir". *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 183 (2005).

En cuanto al requisito de la posesión no interrumpida, el Profesor Vélez Torres sostiene que "[e]s ininterrumpida la posesión cuando no ha cesado y, aun sin haber cesado, cuando no se haya producido ninguna

reclamación tendente a hacerla cesar". J.R. Vélez Torres, *op. cit.*, pág. 274. Sin embargo, nuestro estado derecho reconoce que la posesión puede interrumpir los términos de la prescripción, de forma natural o civil. Artículo 1843 del Código Civil de 1930; 31 LPRA sec. 5264. Se interrumpe naturalmente cuando la posesión cesa por cualquier causa durante más de un (1) año. Artículo 1844 del Código Civil de 1930; 31 LPRA sec. 5265. En cambio, se interrumpe la posesión civilmente cuando se produce alguna de las siguientes causas: (i) citación judicial hecha al poseedor, (ii) requerimiento judicial o notarial y (iii) reconocimiento expreso o tácito que el poseedor hiciere del derecho del dueño del dueño de la cosa contra quien se posee. Artículos 1845, 1847 y 1848 del Código Civil de 1930; 31 LPRA secs. 5266, 5268 y 5269.

En relación con la interrupción natural, Manresa explica que la interrupción natural fue simplificada al solo hecho de la cesación en la posesión por el plazo de un (1) año. J.M. Manresa, *Comentarios al Código Civil Español*, Ed. Reus, T. XII, 6ta Ed., Madrid, España, 1973, pág. 1085. Continúa explicando que, el efecto interruptor puede ocurrir por cualquier causa que haga cesar en la posesión al que la tuviere —pudiendo llegarse a la pérdida de ésta— ya fuese por voluntad e intención o sin ella, incluso, aun contra la voluntad del poseyente. *Id.,* pág. 1089. No obstante, Manresa describe que el poseedor puede perder su posesión debido a cualquiera de las causas siguientes:

1. Por abandono de la cosa poseída.
2. Por cesión hecha a otro por título oneroso o lucrativo.
3. Por destrucción o pérdida total de la cosa, o por quedar ésta fuera del comercio de los hombres; y
4. Por la posesión de otro aun contra la voluntad del antiguo poseedor, si la nueva posesión hubiere durado mas de un año.

*Id.,* pág. 1088 (énfasis omitido).

Además, Manresa expone que tales actos interruptores deben ser continuos y duraderos a los efectos de demostrar la persistencia de la interrupción. *Id.,* pág. 1090. En cuanto al plazo de tiempo, Manresa sostiene que "[s]i transcurre más de un año desde que se empezó la

interrupción, y la cesación en la posesión ha durado todo ese período de tiempo, entonces se entiende interrumpida [...]". *Id.,* pág. 1091. Asimismo, Manresa aclara lo siguiente:

> [...] la exigencia de ese largo plazo se funda en la consideración de que quien en tanto tiempo no ha protestado contra los actos interruptores de la posesión o contra el hecho de la cesación en ella, ni ha pedido amparo a los Tribunales, es visto que consiente en ese derecho y carece, por tanto, de derecho o de acción para reclamar.

*Id.,* págs. 1091-1092.

Respecto a la tercera causa de la interrupción civil, Manresa explica que abarca dos medios para producir el efecto interruptor, a saber: "uno, reconociendo de una manera expresa el derecho del dueño de la cosa poseída; otro, ejecutando cualquier acto que implique dicho reconocimiento". *Id.,* pág. 1107. Asimismo, sustenta que "esos actos de reconocimiento deben ser ejecutados, para que resulten eficaces, antes de que la prescripción se hubiere perfeccionado, porque en otro caso implicaría, a lo sumo, una renuncia del derecho ganado o adquirido por la prescripción". *Id.,* pág. 1108.

Ahora bien, con el propósito de distinguir los efectos entre la interrupción natural y la civil, Manresa explica como sigue:

> [...] la interrupción natural lleva consigo la pérdida total del derecho a prescribir, nacido del lapso de tiempo que se hubiera estado poseyendo antes de la interrupción, pues aun cuando después puede comenzarse de nuevo la prescripcion, no tiene en dicho caso fuerza ninguna el hecho de la anterior posesión, ni es computable el tiempo transcurrido en ella. En esto se diferencia la interrupción natural de la civil, pues en la segunda, si fuere repuesto en la posesión el poseedor se entenderá corrido, para los efectos de la prescripcion, el tiempo que hubiere durado la interrupción.

*Id.,* pág. 1090.

En cuanto a la computación del tiempo de la posesión, el Artículo 1860 del derogado Código Civil de 1930 dispone las reglas siguientes:

> (1) El poseedor actual puede completar el tiempo necesario para la prescripción, uniendo al suyo el de su causante.
>
> (2) Se presume que el poseedor actual, que lo hubiera sido en época anterior, ha continuado siéndolo durante el tiempo intermedio, salvo prueba en contrario.
>
> (3) El día en que comienza a contarse el tiempo se tiene por entero, pero el último debe cumplirse en su totalidad.

31 LPRA sec. 1860.

Sobre la primera regla del precitado artículo, el Profesor Vélez Torres explica que "se refiere a la llamada accesión de posesiones y tiene lugar, tanto en los casos de sucesión a titulo particular [...], como en los de la sucesión a título universal". J.R. Vélez Torres, *op. cit.*, pág. 278. Además, comenta que en ese escenario "la posesión de los bienes hereditarios se entiende trasmitida al heredero sin interrupción y desde el momento de la muerte del causante. *Id.*

## C. Apreciación de la Prueba

Sabido es que los foros apelativos tenemos la facultad de revisar en su totalidad las conclusiones de derecho que emita el Tribunal de Primera Instancia. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Sin embargo, en cuanto a las determinaciones de hechos, la Regla 42.2 de Procedimiento Civil dispone lo siguiente:

> Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.

32 LPRA Ap. V, R. 42.2.

Lo anterior, basado en que, el foro primario merece gran deferencia, ya que es quien está en mejor posición de evaluar y adjudicar la credibilidad de un testigo. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 810 (2009); *Argüello v. Argüello*, 155 DPR 62, 79 (2001). Esto es, es el Tribunal de Primera Instancia quien tiene la oportunidad de apreciar los gestos, titubeos, contradicciones, manierismos, dudas, vacilaciones, entre otros elementos subjetivos, de los testigos que declaran en el pleito. *Argüello v. Argüello*, supra, págs. 78, citando a *Figueroa v. Am. Railroad Co.*, 64 DPR 335, 336 (1994).

Por ello, nuestro Tribunal Supremo ha sido enfático en que los tribunales apelativos —como regla general— debemos evitar intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza el foro primario, salvo que se

demuestre que este incurrió en error manifiesto, pasión, prejuicio o parcialidad. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016); *Dávila Nieves v. Meléndez Marín*, supra, pág. 771; *Ramírez Ferrer v. Conagra Foods PR*, supra, pág. 811; *Argüello v. Argüello*, supra págs. 78-79. Por tanto, nuestra intervención con la prueba testifical solo procederá cuando, al llevar a cabo un análisis integral de esta, "nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia". *Sucn. Rosado v. Acevedo Marrero*, supra, pág. 918. Por consiguiente, nuestra facultad de sustituir las determinaciones hechas por el Tribunal de Primera Instancia se limita a aquellas circunstancias en las que no exista base suficiente para apoyar las mismas a la luz de la prueba admitida. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022); *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020).

De este modo, una parte que impugne las determinaciones de hechos emitidas por el foro primario debe identificar el error manifiesto o fundamentar la existencia de pasión, prejuicio o parcialidad. *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009). Dicha parte deberá "sustentar sus alegaciones con evidencia suficiente, pues estas no deben convertirse en un instrumento para ejercer presión contra el Tribunal de Primera Instancia". *Dávila Nieves v. Meléndez Marín,* supra, pág. 775. De esta forma, el foro apelativo podrá evaluar si el juzgador de los hechos cumplió con su rol de adjudicar la controversia conforme a derecho y de manera imparcial. *Id.*, pág. 777.

Particularmente, cuando se trate de prueba pericial, ningún tribunal está obligado a coincidir con las conclusiones de un perito, independientemente de que esta sea técnicamente correcta. *Sucn. Rosado v. Acevedo Marrero*, supra, pág. 918. Por tanto, todo tribunal tiene discreción de adoptar su propio criterio en la apreciación de dicha prueba. *Id.*, citando a *Zambrana v. Hospital Santo Asilo de Damas,* 109 DPR 517, 522 (1980) y a *Prieto v. Maryland Casualty* Co., 98 DPR 594, 623 (1965).

Asimismo, los foros apelativos se encontrarán en la igual posición que el foro de instancia para evaluar la prueba pericial. *Sucn. Rosado v. Acevedo Marrero*, supra, pág. 918; *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En el caso de epígrafe, la Sucesión Resto García señala la comisión de tres (3) errores por parte del foro primario. No obstante, atendemos con prioridad el tercer señalamiento de error planteado por los apelantes, en la medida en que podría afectar nuestra jurisdicción para revisar el recurso de epígrafe. En síntesis, los apelantes sostienen que la *Moción de Reconsideración [y] Determinaci[ones] de Hechos Adicionales* cumplía con todos los requisitos de la Regla 47 de Procedimiento Civil, *supra* y que, por tanto, el foro primario incidió al determinar lo contrario. Adelantamos que la solicitud de reconsideración y determinaciones de hechos adicionales presentada por los apelantes interrumpió el término para apelar. Veamos.

En nuestro estado de derecho, es harto conocido que la Regla 43 y la Regla 47 de Procedimiento Civil, *supra,* exigen que las solicitudes sean oportunas y específicas. Esto es, el promovente de una moción —sobre determinaciones de hechos adicionales y reconsideración— debe exponer una propuesta con suficiente particularidad de los hechos que estima probados y que estos se funden en cuestiones sustanciales, así como el derecho aplicable que estima debe reconsiderarse. 32 LPRA Ap. V, R. 43 y 47; *Morales y otros v. The Sheraton Corp.,* supra. Además, el promovente debe presentar oportunamente la referida solicitud para que tenga el efecto de interrumpir el término de apelar la determinación en cuestión. *Íd.* No obstante, la propia Regla 43.1 de Procedimiento Civil, *supra,* exige que ambas solicitudes —entiéndase la moción de reconsideración y determinaciones de hechos adicionales— deben acumularse en una misma

petición y permite que el tribunal resuelva los asuntos en una sola resolución.

Considerando lo antes expuesto y tras examinar la *Moción de Reconsideración [y] Determinaci[ones] de Hechos Adicionales,* concluimos que fue presentada oportunamente dentro del término de quince (15) días desde la fecha de archivo en autos de copia de la notificación de *Sentencia.* Además, nos parece que la referida moción fue lo suficientemente específica con relación a las determinaciones de hechos adicionales y el derecho que debía reconsiderar el foro primario. Así pues, los apelantes cumplieron con los dos criterios rectores que exige tanto la Regla 43 y la Regla 47 de Procedimiento Civil, *supra.*

Por tanto, concluimos que la moción de reconsideración presentada interrumpió el termino apelativo y, por tanto, tenemos jurisdicción para revisar el caso de epígrafe.

A continuación, procedemos atender el primer y segundo señalamiento de error planteado por los apelantes de forma conjunta por estar relacionados entre sí. De un lado, argumentan que el foro primario incidió al no considerar que la *Demanda* de epígrafe era tardía e inoficiosa, ya que a la fecha de su presentación la usucapión era un hecho consumado. Por otro lado, argumentan que la evidencia testifical y documental desfilada en el juicio demostró el cumplimiento con los requisitos de la usucapión extraordinaria y, por tanto, que el foro primario erró en su apreciación de la prueba. Adelantamos que, ninguno de los dos argumentos nos persuade. Veamos.

A modo de preámbulo para nuestro análisis, los hechos de este caso consisten en que la señora Resto suscribió un contrato de compraventa en el año 1985 para adquirir una estructura en madera enclavada en un terreno ubicado en Culebra, el cual reconoció que pertenecía al Municipio o a la Marina de Estados Unidos. Dado a que su único hijo —el Sr. Alfredo Roberto Martínez Resto (en adelante, "señor Martínez")— murió en el 17 de

enero de 2016, ésta otorgó un testamento abierto para, entre otras cosas, instituir como herederos a sus nietos con relación al inmueble ubicado en Culebra. Tras lo anterior, en el año 2016, la señora López en representación de sus hijos menores de edad —los nietos de la señora Resto— empezó a gestionar la titularidad del bien por haberse consumado alegadamente una usucapión extraordinaria con el transcurso de 30 años desde el contrato de compraventa.

Ciertamente, de un cálculo meramente aritmético, nos llevaría a concluir que desde el año 1985 al 2016 transcurrieron más de 30 años. Sin embargo, la doctrina es clara en cuanto a que para consumar la usucapión extraordinaria no solo requiere el transcurso de un plazo de 30 años, sino que requiere el cumplimiento de otros requisitos provistos por ley. Esto es, la adquisición de la propiedad por medio de la usucapión extraordinaria requiere que se mantenga la posesión del bien inmueble en concepto de dueño, de manera pública, pacífica y no interrumpida, sin la necesidad del elemento de buena fe ni título. Artículo 1841 del Código Civil de 1930; 31 LPRA sec. 5262. No obstante, los términos de la usucapión se pueden interrumpir de forma natural, si cesa la posesión del bien durante más de un (1) año por razón de abandono, entre otras causas. Artículo 1844 del Código Civil de 1930; 31 LPRA sec. 5265; J.M. Manresa, *op. cit.,* págs. 1085 y 1088. Según la interpretación de Manresa, "[s]i transcurre más de un año desde que se empezó la interrupción, y la cesación en la posesión ha durado todo ese período de tiempo, entonces se entiende interrumpida [...]".

En contraposición a lo anterior, notamos que los apelantes testificaron en el juicio que han poseído el inmueble por 30 años de manera continua e ininterrumpida. En particular, alegaron que visitaban la propiedad "siempre en verano, en Navidad, en Acción de Gracias; despedir el año. Sobre todo, íbamos en 'Spring break'". Véase, TPO, tomo 1, pág. 183. Tanto así que, la señora Lopez sostuvo que la propiedad tiene las huellas de pintura de las manitas de sus hijos pegadas a las paredes conforme iban creciendo. *Id.,* pág. 184. Incluso, alegaron que, durante esos

30 años de posesión, nunca dejaron de pagar por los servicios de agua y electricidad de la propiedad en cuestión. *Id.,* págs. 198-199. Sin embargo, nada de ello le mereció credibilidad al foro primario. Así las cosas, lejos de demostrar que el TPI cometió pasión, prejuicio y parcialidad sobre ese aspecto, notamos que no surge del expediente evidencia alguna —como las facturas de agua y/o electricidad, fotografía de la propiedad o imágenes de las ocasiones que vacacionaron en Culebra— que hagan constar que, en efecto, los apelantes hayan poseído el inmueble por 30 años de manera continua e ininterrumpida.

Todo lo contrario, lo que consta en el expediente es una aceptación de haber dejado ir a Culebra por varios años debido a la enfermedad de corazón del señor Martínez. *Id.,* tomo 2, pág. 141-142. Sobre la condición de enfermedad, la señora López declaró que, el señor Martínez "[e]staba padeciendo del corazón. A él se le cambio la válvula. Quedó con un 25% de función del corazón y se asfixiaba. Se le hacía difícil subir escaleras. Caminaba cuatro o cinco pasos y tenía que detenerse". *Id.,* tomo 2, pág. 168. Asimismo, continuó declarando que el señor Martínez murió el 17 de enero de 2016 y tuvo enfermo durante siete (7) años. *Id.,* tomo 2, pág. 142, 168.

Basándonos en esos datos, el señor Martínez se enfermó en el año 2009 y, por tanto, aproximadamente desde el 2009 los apelantes dejaron de visitar la propiedad en Culebra a tal punto que la propiedad ni tenía agua ni electricidad. Incluso, surge del expediente que la señora Resto no visitaba la propiedad en cuestión, ya que tenía 103 años de edad y no le interesaba ir. *Id.,* tomo 2, págs. 160-161.

En contraposición a lo anterior, los nietos de la señora Resto declararon en el juicio que ellos sí continuaron visitando la propiedad durante los años de enfermedad del su padre —el señor Martínez— aun cuando no había conexión de agua y electricidad. *Id.,* tomo 2, págs. 254, 273-274, 287. Inclusive, sostuvieron que, a pesar de su enfermedad, el

señor Martínez visitó la propiedad por última vez en el año 2015. *Id.*, tomo 2, págs. 279-280 y 287-288.

Aquilatando la prueba presentada, el foro primario no otorgó credibilidad a los testimonios presentados por la Sucesión Resto García. Razón por la cual, el foro primario concluyó que el termino prescriptivo de la usucapión fue interrumpido, toda vez que la Sucesión Resto García abandonó por varios años el inmueble en cuestión.

Expusimos en la parte II de esta *Sentencia*, que la norma en los asuntos de credibilidad de testigos es que le corresponde al foro primario examinar y otorgar el valor probatorio de los testimonios ofrecidos en corte. Además, indicamos que, como foro apelativo intermedio, no debemos intervenir con esa función judicial a menos que se nos demuestre que el foro primario actuó con pasión, prejuicio, parcialidad o error manifiesto.

No obstante, ante el hecho que los apelantes no nos han puesto en posición para determinar que medio pasión, prejuicio, parcialidad o error manifiesto, debemos otorgar deferencia al foro primario en cuanto a las determinaciones de credibilidad que concedió a los testigos que tuvo ante sí. Por tanto, en el caso de autos, debemos tomar como cierto el hecho de que los apelantes dejaron de visitar la propiedad por las razones que fuesen y ello tuvo el efecto de cesar la posesión de la Sucesión Resto García e interrumpir naturalmente el término de la usucapión extraordinaria que alegan haber consumado.

Así pues, no podemos avalar la alegación de los apelantes con respecto a que han sido poseído el terreno en controversia de forma continua e ininterrumpidamente.

De otra parte, mencionamos en el derecho aplicable que la doctrina de la usucapión extraordinaria no requiere tener un título. Por lo que, en estos casos, es de suma importancia que la posesión se ejecute en concepto de dueño, ya que es lo único que sirve a manera de título para adquirir el dominio. Artículo 376 del Código Civil de 1930; 31 LPRA sec. 1462. Entendiéndose que la "posesión en concepto de dueño" es la creencia

pública general en cuanto a que el poseedor, en efecto, es el titular del bien, dados los actos que ejecuta en cuanto al mismo. En cuanto a la percepción de la comunidad sobre el dueño del inmueble en cuestión, tanto el Municipio como la Sucesión Resto García durante el juicio presentaron un testigo cada uno, los cuales se contradijeron entre sí.

Por un lado, el Sr. Orlando Bermúdez Rodríguez —testigo del apelado— declaró que ha vivido en Culebra toda su vida y que nunca conoció a la señora Resto ni al señor Martínez ni a la señora López. *Id.,* tomo 1, págs. 26, 53, 57-58, 64-65, 80. Asimismo, describió que el inmueble en cuestión estaba baldío, con mucha maleza de aproximadamente 5 pies de altura, sin acceso, abandonado y desocupado. *Id.,* tomo 1, págs. 29, 55-57, 83-85.

De otra parte, el Sr. Guadalupe Márquez —testigo de los apelantes— declaró que ha vivido en Culebra desde el año 1978 y que conocía a la señora Resto, al señor Martínez, a la señora López y a la Sucesión Resto García, ya que estos visitan a Culebra todos los meses. *Id.,* tomo 2, págs. 198, 200-201, 206, 215, 224-227. Además, sustentó que, según su conocimiento, la señora Resto y el señor Martínez eran los dueños de la propiedad ubicada en Culebra. *Id.,* tomo 2, pág. 205. A su vez, sostuvo que no había maleza alta en el inmueble, ya que él personalmente se encargaba de darle mantenimiento a las áreas verdes. *Id.,* tomo 2, págs. 246-247.

No obstante, tras aquilatar lo anterior, el foro primario otorgó credibilidad al testigo del Municipio, así como a la prueba documental presentada en el juicio. A base de ello, el foro primario determinó que no había controversia en cuanto a que la propiedad en cuestión está registrada a favor del Municipio y que la Sucesión Resto García se encuentra en posesión de esta. Sin embargo, concluyó que la usucapión nunca se consumó, debido a la interrupción del término prescriptivo para usucapir tras el reconocimiento expreso de los derechos del Municipio como dueño del inmueble. Esto es, que la Sucesión Resto García reconoció que la finca

en cuestión le pertenece al Municipio o a la Marina de Estados Unidos y, por tanto, no poseía en concepto de dueño.

Considerando lo anterior, examinamos el expediente y notamos que, en el *Contrato de Compraventa*, la señora Resto consignó que "est[á] consciente que el terreno es propiedad de la [M]arina de los Estados Unidos de América y/o [M]unicipio de Culebra". Véase, apéndice de los apelantes, anejo I, pág. 16. Asimismo, en el *Testamento Abierto*, estableció que la "[e]dificación de madera la cual está localizada en el Barrio Resaca número dieciocho (18) de la isla de Culebra, cuyo solar, entiende la Testadora, pertenece al Municipio de Culebra". *Id,* pág. 10. De igual forma, en una misiva dirigida al alcalde de Culebra fechada el 18 de junio de 2016, la señora López suscribió que "al momento de esa compraventa los terrenos aun pertenecían a la Marina de los Estados Unidos". Véase, apéndice de los apelantes, anejo X, pág. 239.

Conforme explicamos, nuestro estado derecho reconoce que la posesión puede interrumpir los términos de la usucapión de forma civil, si existe un reconocimiento expreso del derecho del dueño de la cosa poseída. 31 LPRA sec. 5264; J.M. Manresa, *op. cit.,* pág. 1107. Asimismo, en cuanto a los asuntos de credibilidad, reiteramos que el foro primario es quien le atañe examinar el valor probatorio de los testimonios ofrecidos en corte. Salvo medie pasión, prejuicio, parcialidad o error manifiesto por parte del foro primario, este foro apelativo intermedio no debe intervenir con esa función judicial.

Sin embargo, tras examinar con detenimiento el expediente, no hemos hallado indicador alguno que nos obligue a no concederle gran deferencia a las adjudicaciones de credibilidad que efectuó el juzgador de instancia. Tampoco se nos ha demostrado que, en este caso, el foro sentenciador se alejó de la realidad fáctica, o que su apreciación de la prueba fue producto de pasión, prejuicio, parcialidad o que cometió error manifiesto.

En fin, concluimos que no existe base jurídica para intervenir con lo resuelto por el foro primario. En consecuencia, el primer y segundo señalamiento de error no fueron cometidos.

**-IV-**

Por los fundamentos previamente expuestos, se **confirma** la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones